## THE SMITH DIXON CO. *vs.* ROBERT L. STEVENS.

*Preliminary Injunction to Restrain Alleged Infringement of a Trade Mark Under Statute.—Doubtful Right.*

Plaintiff, who had been making paper bags with a certain device or label on them for one X who used them in the sale of his teas and coffees, claimed that this device was his, the plaintiff's property right, or was a trade mark for paper bags containing such merchandise. Code, Art. 27, secs. 44, 47, provide that when any person shall adopt a label or trade mark and shall register the same with the Secretary of State, any other person shall be enjoined from using an imitation or counterfeit thereof, and such use is also made a misdemeanor. Plaintiff registered with the Secretary of State the above-mentioned label for paper bags, erasing therefrom the name of X. The registration was on June 1st, and twenty-eight days afterwards plaintiff filed the bill in this case alleging that the defendant had for sometime past been selling to X bags made with a label in imitation of plaintiff's and asking for an injunction. The bill was not filed to protect plaintiff's common law right of property in the alleged trade mark, but asked only for relief under the statute. *Held,* that under these circumstances a preliminary injunction before hearing to restrain the imitation of plaintiff's label should not be granted, because in the first place there is no allegation that the defendant had sold any bags with this label since plaintiff's registration of it, or was about to do so ; and in the second place because it is doubtful if plaintiff has the exclusive right to the use of the label, since it had been used by X for many years, and the mere fact that it had been printed for him by the plaintiff does not necessarily give plaintiff a right to control its use by making registry thereof.

Appeal from the Circuit Court of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE; and SCHMUCKER JJ.

*Joseph C. France* (with whom was *George R. Willis* on the brief), for the appellant.

(1) It is not claimed that Stevens has any property in the device other than that acquired, if any, from registration under the Act of 1892. There is no claim of copyright ; and clearly such a device (irrespective of its implication with the name and

business of the Kenny Company) could not be appropriated by Stevens.

(2) It is not claimed that Stevens has or could register the device as a technical trade mark.   In the first place the composition is not sufficiently arbitrary ; and, in the second place, a trade mark or name must identify its owner with the goods to which it is attached.   Obviously the device in question sig· nalizes not the bag, but the contents.   " No one has a right to appropriate as a trade mark, a sign or a symbol, or a name, which from the nature of the fact it is used to signify, others may employ with equal truth."   *Corbin* v. *Gould*, 133 U. S. 308.

(3) It is not pretended that the Smith, Dixon Company has, by the use of the device imposed its goods upon the public or upon the Kenny Company as the goods of Stevens.   There is here no case of unfair competition by the fraudulent or colorable imitation of a name, symbol or mark which is identified, in the public mind, with the goods of another.   Stevens did not print the device in question for any customer but the Kenny Company (the latter could enjoin him if he did) ; and the Kenny Company necessarily knows that the bags sold to it by the Smith, Dixon Company are not made by Stevens.

The only damage set up by the bill is that arising from the fact that the Kenny Company has taken a part of its custom from the complainant Stevens and has given it to the defendant, Smith, Dixon Company ; and this is obviously *damnum absque injuria* unless Stevens has the right to prevent the Kenny Company from using this device on any bags except those it buys from him.   It is apparent, that the Kenny Company should be a party to this injunction, because the real question is whether or not Stevens can say to it : " Although this device is an advertisement of your goods and not of mine ; and although it has for many years been a mark of your trade, you can't use it unless you will pay my prices for bags." This is necessarily the issue, because if the Kenny Company can use the device, it can authorize any one to print it for its use. In support of his right so to hold the Kenny Company, Stevens relies upon the statute on which the bill is brought.

This Act in no sense bears upon the case made out by the bill. The legislation is similar to that adopted more or less contemporaneously in other States, and is like, almost literally, a statute of Illinois, which from a constitutional point of view is rather more crudely drawn than the similar legislation of other States. The primary purpose of these statutes was to protect so-called " union labor " by punishing the fraudulent imitation or use of the labels placed upon " union made " goods. As the weight of authority formerly stood, no one could have property in a trade mark or label as a thing detached from the ownership of the goods to which it was attached; nor was the fraudulent imitation of a trade mark punishable by the criminal law. Except in these two respects it is not perceived how such statutes have made any change in the previously existing state of the law.

. That such was the purpose of the legislation is confirmed by a brief consideration of the words and ideas employed. (*a*) The label, trade mark or form of advestisement registered must be one *adopted* by some person, association or union of workingmen for *their* protection. (*b*) Such label, trade mark or form of advertisement must announce *and* denote that "goods to which it shall or may be attached were *manufactured*" by the person or association adopting the label, trade mark or form of advertisement. (*c*) The two offenses created are (1) the fraudulent counterfeiting or imitating; (2) and " the use or display of the genuine label, trade mark or form of advertisement " in any manner not authorized by the person, union or association adopting it.

*First.* Without reference to the wisdom of the Act it is carelessly drawn and doubtless unconstitutional in this: among other things it is said, that when a label, trade mark or form of advertisement has been registered under it, the Secretary of State shall give a certificate and this shall be " sufficient proof of the adoption of such label, trade mark or form of advertisement and the right of such person, association or union to adopt the same; no label shall be recorded that probably would be mistaken for a label already of record, of which

question the said Secretary shall be the judge." Under these provisions, a registered label might be a bald imitation of an existing trade mark ; the Secretary of State might be (and very likely would be) ignorant of the fact ; and yet by the terms of the Act the true owner would be deprived of his property without a hearing and without anything approximating due process of law.

*Second.* But constitutional or not, the Act is irrelevant ; (*a*) It is clear that Stevens never did and never could adopt to the exclusion of the rights of the Kenny Company, the device which he has registered. An examination of Exhibit B will show that it is Kenny's trade mark and that it was physically impossible for Stevens to eliminate the traces of the Kenny Company's name without disfiguring it utterly. (*b*) In no sense does the device as registered "announce *and* denote that the goods to which it shall or may be attached" are the goods of Stevens. The name of Stevens is not mentioned on the registered device, and the goods dealt in by Stevens are bags and not teas, coffees and sugars. (*c*) The essential element of the offense created by the Act is fraud—the use of a label which tells a lie and thereby deceives the public. The equitable relief given is simply cumulative; and to sustain this bill such facts must be stated in it as would justify a conviction in the criminal Court. If the Act applies, the Kenny Company may be indicted under it as well as the Smith, Dixon Company; and this test, it is submitted, is decisive.

*Third.* It is submitted that the complainant has shown no case at all; and that upon final hearing the bill must be dismissed. But there was in no event, any ground for a preliminary injunction. The bill did not in terms pray for such relief, and while it might have been granted under the general prayer, no irreparable loss or damage before final hearing was shown or pretended. Moreover the bill does not contain a full and entirely frank disclosure of the real situation; it omits a necessary party, namely the C. D. Kenny Company; and it leaves to inference what should have been stated, that

the rights of that company are involved in any decision the Court may reach.

*John V. L. Findlay* and *John V. L. Findlay, Jr.*, (with whom was *Thos. Mackenzie* on the brief), for the appellee.

There is no dispute as to the facts that the plaintiff adopted the form of advertisement or label as registered; that he had used the same for thirty years and more before this to identify bags of his manufacture, and that the defendant was using precisely the same form of advertisement or label, and was thereby doing a great injury to the plaintiff.

If this does not constitute a case for the relief asked and granted, it will be difficult to conceive of one that would. It will not be claimed, we suppose, that such a form of advertisement was not property in any sense that would entitle it to the protection of the Courts. In a similar case, which concerned a cigarmaker's label, JUDGE PHELPS decided this very question against such a contention and very sententiously observed that it was at least *worth stealing.* *Cigarmakers Union, No. 1*, v. *Link—Note to State* v. *Bishop*, 29 L. R. A. 202.

The essentials of property as JUDGE PHELPS said in that case, quoting from LORD MANSFIELD in *Miller* v. *Taylor*, 4 Burr. 234, are a "distinguishable existence in the thing claimed as property and an actual value in that thing to the owner." Tested by this definition there can be no question that the form of advertisement in this case is property. It is distinguishable from all other forms adopted for the purpose of identifying goods of a similar make, and the undisputed allegation of the bill is that it is valuable to its owner. This decision of JUDGE PHELPS was made in the same Court from which this appeal is taken, some time in November, 1886, and of course before the Act of 1892 was passed. According to this decision the plaintiff could have enjoined the defendant at common law, but there were difficulties in the way of doing this, as was shown by JUDGE HOLMES, now of the Supreme Court of the United States, in the case of *Tracy* v. *Banker*, 39 L. R. A., pages 508–9, which led to the passage of an Act in

Massachusetts which is similar in terms to our Maryland statute.

The bill is framed, therefore, for the purpose of obtaining relief either at common law or under the statute, and alleges that the plaintiff, for the better protection of his form of advertisement or trade mark, had the same registered as required by its provisions. It would seem, as indicated by the defendant's answer, that it will contend that the label registered by the plaintiff does not comply with the provisions of the Act because it fails to *"announce and denote"* that it was intended to be applied to goods ·manufactured by him. The habitual, continued and uninterrupted use of a label announces and denotes the origin of the goods to which it is applied just as effectually as if the name of the maker had been printed all over the goods. It is by the symbol rather than by the name that such origin is indicated and becomes a valuable right. Letters and numerals are often the ruling parts of the trade mark without any name. 26 *Am. & Eng. Encyc.*, 256, ed. 1894.

If numerals, letters and fractions can ripen by use into genuine trade marks, then there can be no satisfactory reason given why the scolloped seal adopted by the appellee may not achieve the same result—and if this is so, then it *announces and denotes* within the meaning of the statute that the goods to which it is applied are of Stevens' make, and any other construction would prevent the owner of a numeral, letter or other arbitrary trade mark disconnected from the name of the manufacturer from obtaining its protection. It follows then that the label in question here after a use of nearly a third of century came to identify bags of the Stevens' make as unmistakably as though Stevens' name accompanied the label.

The certificate of the Secretary of State certifies that Stevens filed this label with him as required by the Act of Assembly before cited. And that the defendant *knew* that it was imitating this label is proven by Plaintiff's Exhibit A., the bag itself, which has Stevens' name printed on it in clear and unmistakable letters. When it comes to the proof, if the defend-

ant can show that it adopted this symbol innocently, not know-
ing that it was the property of some one else, it will be time
enough to consider whether Stevens was derelict in not print-
ing his name on the label itself.    Looking at the answer, it is
clear, that this is not the real defense.    The real defense will
be that Stevens did not own the mark, but that it was the
property of the C. D. Kenny Co., and as the Smith, Dixon
Co. had its authority for using it, Stevens has no cause of
complaint.

Stevens is a manufacturer of *bags*—not of the *contents* what-
ever they may be—sugar, coffee, teas or what not.    It is to
his interest to make an attractive bag for his customers in or-
der to advertise and promote the sale of their goods as well as
his own.    The more attractive he makes the bag, the more
bags will his customers purchase from him, and the more will
their customers in turn purchase of the article which make up
the contents of the bags.    When he sells a bag his connection
with the transaction ceases, and he is not at all interested in
what may be put in it, but his customer is, and for this reason
he has invented and adopted numerous cuts and prints, which
are more pleasing to the eye than a naked paper bag.    He
can adapt these cuts and prints when applied to bags so as to
sell the goods of different customers; as for example, sugar for
one, coffee for another, and so on.    For this reason he does
not put his own name on the label.    His name appears on
the bag, however, as already said; although not on the label.
The only question on the construction of the Act turns on the
point whether a person can be the proprietor of a mark placed
on the receptacle, holder or wrapper as well as on the article
contained in the same. *Hetterman* v. *Powers*, 39 L. R. A. 211.

There can be no difference between ownership of a label
placed on a box of cigars not owned by the proprietor of the
label and the ownership of a label placed on a bag, the con-
tents of which are owned by some one else.    And it would
be singular if such a proprietary right, good at common law,
was impaired by a statute which was passed for the express
purpose of establishing the right and putting it beyond ques-

tion.   The validity of the legislation has been affirmed in numerous cases.   *Cohn* v. *People*, 149 Ill. 23, L. R. A. 821; *Perkins* v. *Hcert*, 158 N. Y. 306, 43 L. R. A. 858.   See also case where bill was filed to restrain defendant from perpetrating a fraud which injured the plaintiff's business, (*Carson* v. *Ury*, 39 Fed. Rep. 777, 5 L. R. A.), irrespective of the law of trade mark.

BOYD, J., delivered the opinion of the Court.

This is an appeal from an order granting a preliminary injunction against the appellant at the instance of the appellee. The bill alleges that the plaintiff has been engaged for many years in Baltimore in the business of making paper bags, a sample of which is filed as an exhibit, and to further promote and extend the sale of the same he adopted the cut or print which appears on the exhibit.   It further alleges that these paper bags were very largely sold to persons engaged in the business of selling teas, coffees and sugars and, among others, to the C. D. Kenny Co., doing business in Baltimore, that the plaintiff derived a large income from the sale of the same and, for the further protection of his rights in said label or form of advertisement, he in pursuance of the Act of Assembly, 1892, ch. 357, had it registered with the Secretary of State, a copy of which, together with the certificate of the Secretary, is filed as an exhibit.   It then charges that the appellant company has for some time past been selling paper bags manufactured by it to the C. D. Kenny Company, a sample of which is filed as an exhibit, and which contains an imitation of the plaintiff's said form of advertisement, and prays for an injunction against the defendant and for other relief, which will hereinafter be more particularly mentioned.

The Court passed an order "that the writ of injunction issue as prayed," provided a bond be given as therein directed, and gave the defendant the usual leave to move for a rescission of the order and dissolution of the injunction.   From that order this appeal was taken, after the defendant had filed its answer. Under our decisions we are not at liberty to consider the an-

swer, but must be governed entirely by the bill and exhibits filed with it.

By agreement of solicitors *fac similes* of the paper bags and of the registered label, filed as exhibits, were produced at the hearing in this Court instead of copying them in the record. We will direct a *fac simile* of the label registered with the Secretary of the State to be inserted in the report of the case, in order that it may be more easily understood. On the paper bags of the plaintiff, is printed in red ink, this registered label, excepting there is no blank space, but there are the letters and words "C. D. Kenny Co." in place of the blank. Above this device there is in capital letters and figures "Established 1870," and just beneath it "60 Stores." There are beneath that a red heart on which there is printed "Paper Bag Workers,

Union Made, Union A. F. of L," to the right of that a round
                              Stevens
red imprint on which are printed "Made in 4 Balto., and *still*
                              Sandow,"
to the right of that is Trades Council Union Label, with the
figures 14, which we presume is the number of the Council.
On the paper bag of the defendant is a large device like that
of the plaintiffs, with the word "Established 1870" above and
"60 Stores" below.    Then still below that is the Union Label
                              The Product Of
with figures 20, which separates the words
                              Union Label,
and below that is a figure in red which we understand to be
the number of pounds the bag holds.

The appellee contends that he is entitled to relief, either
under the common law or under the Act of 1892,    Without
meaning to question the right of a Court of equity to grant
one entitled to it the writ of injunction to protect a trade mark
as the right existed in this State prior to the Act of 1892, it is
clear that the *injunction granted* was based on that Act alone.
We are not called upon, on this appeal, to determine whether
an injunction could issue on this bill under the powers of a
Court of equity, as they existed with reference to trade marks
prior to the passage of this Act, but only whether the injunc-
tion that *has already been issued* was proper.    The fourth par-
agraph of the bill is as follows: "Your orator further shows
that offenders against the said Act cannot only be proceeded
against criminally, but the remedy of an injunction is expressly
given to anyone whose rights are invaded by the piracy of
said form of advertisement, and accordingly he prays for the
writ of injunction against the said Smith, Dixon & Co., re-
straining it from using said imitation of said form of advertise-
ment, or any counterfeit of the same, and that it may be
ordered to surrender up to the Clerk of this Court all such
imitation forms of advertisement they may have on hand for
destruction by said Clerk, and pay the costs of this proceeding,
together with such reasonable attorney's fee as the Court may

allow, and pay all the damages which your orator has suffered by reason thereof, and for such other and further relief as his case requires and may be just." The bill therefore not only, after referring to the Act, *accordingly* prays for the injunction, etc., but every form of relief provided for in section 4 of the Act, is specifically prayed for (unless perhaps it be the profits therein mentioned), and no other relief is prayed for, excepting such as may be obtained under the prayer for general relief. It would seem therefore to be clear, without making other references to it, that the bill must be limited to relief under that statute alone and the order for a preliminary injunction must be held to have been so intended.

We have found some difficulty in considering the question from the manner in which the bill is drawn. It is not altogether clear that it does not ask for a mandatory injunction, ordering the defendant to surrender to the Clerk the forms of advertisement it has on hand for destruction by him. The statute has that provision at the end of section 4, and when read in its proper place it can be seen that such order can only be passed after a hearing, but in the bill the prayer for that is placed next to that for the writ of injunction restraining the use of said form of advertisement. The order of the Court is that the writ of injunction "issue as prayed," but we will assume that it was not intended to direct the issue of the mandatory injunction before hearing. The writ is not in the record, as it doubtless would have been if it had included a mandatory injunction.

Section 1 of this Act provides "That whenever any person, association or union of workingmen have adopted, or shall hereafter adopt for their protection any label, trade mark or form of advertisement announcing and denoting that goods to which such label, trade mark or form of advertisement shall or may be attached were manufactured by such person, or by a member or members of such association or union, it shall not be lawful for any person or corporation to counterfeit or imitate such label, trade mark or form of advertisement," and then provides that every person violating this section shall be

deemed guilty of a misdemeanor, and upon conviction be punished by imprisonment or fine, or both, as therein provided. *Section 2* makes every person, corporation or association, who shall use any counterfeit or imitation of any label, trade mark or form of advertisement of any such person, etc., knowing the same to be counterfeit or imitation, guilty of a misdemeanor, subject to imprisonment or fine, or both, and places the burden on the defendant of proving that he did not know the true character of it, and that he used the same in good faith. *Section 3* provides for filing the label, etc., for record in the office of the Secretary of State, and for the effect of his certificate. *Section 4* provides the relief above stated. *Section 5* makes it a misdemeanor to use or display the genuine label, etc., of any such person, etc., in any manner not authorized by him, and *section 6* prohibits the use of the name or seal of any such person, association or union, or officer thereof, in and about the sale of goods or otherwise, without being authorized to so use the same.

The certificate of the Secretary of State is dated the 1st day of June, 1904, and we understand that to have been the date on which the label was filed, as no other is given. This bill was filed and the injunction granted on the 28th of that month. The bill does not *in terms* allege that the defendant had sold any of the paper bags with this label on them since the certificate of the Secretary of State was issued. It does allege that the said Smith, Dixon & Co. "have for sometime past been selling" them "and which said bags contain an imitation of your orator's said form of advertisement." It does not specifically state how long the plaintiff has been selling bags with this label on them. It says he has been "engaged in the business of making paper bags, a sample of which is herewith filed and marked 'Plaintiff's Exhibit A,' that the said firm has carried on said business for thirty-two years at the same place in the city of Baltimore   *   *   *   and to further promote and extend the sale of the same your orator adopted the cut or print which appears on the said exhibit, and which serves as an attractive and useful form of advertisement in

bringing the contents of said bags to the notice of customers and parties dealing in the same." It does allege that the defendant has deprived the plaintiff "of the large profits which he would have earned in the regular course of business if he had not been thus unlawfully interfered with by the defendant, contrary to the provisions of the said Act," etc., but no one can, from the reading of the bill, be certain that the defendant has sold any of the bags since June 1st, and it is impossible to reach the conclusion that he has, unless it be from mere inference, and there is no allegation that he intends or threatens to continue to do so. "If the facts, as stated upon the face of the bill, be not full and sufficiently definite and clear, in support of the right asserted, and that such right has been violated in the manner charged, the Court will not order the defendants to be restrained before they are heard in their defense." *Miller's Eq. Proc.*, 687. Remembering that we have already said that this preliminary injunction was based on the Act of 1892, the reason we have assigned is sufficient to show that it should not have been issued.

But the right to the relief prayed is too doubtful in other respects, as made out by the bill and exhibits. It seems to us to be perfectly manifest that the label filed with the Secretary of State is a copy of that used by C. D. Kenny Co., filed as "Plaintiff's Exhibit A," which, as must be inferred from the bill, had been used long before June 1st. When it was made there was an effort to leave off the name of C. D. Kenny Co., but the upper and lower part of the letter "K" and the lower part of the letter "y" are apparent—are the same shape and about, if not exactly, the same size. Indeed we understand the bill to admit—at least inferentially—that the plaintiff had printed that form for C. D. Kenny Co. for a long time before the plaintiff filed the label with the Secretary of State. If, as we think can be inferred from the bill, the C. D. Kenny Co. has been for years using this form of advertisement for the sale of their teas, coffees and sugars, the plaintiff should not necessarily be permitted to assert the exclusive right to it, simply because he sold the bags and printed that form on it. No one

would suppose from looking at the bags that it was a trade mark of the plaintiff—but, if of anyone, that of the company selling its goods in it. Of course we are not speaking of the imprint at the bottom of the bag, with Stevens name on, but of this label which is alleged to be like that filed with the Secretary of State. It could hardly be said that it would be to the advantage of C. D. Kenny Co., in the sale of their goods, to have the public know or believe that the plaintiff makes the bags in which they are sold. It might be important to have the stamp of the Trades Council on them, but it is not involved in this case, and presumably the defendant has as much right to such a stamp as the plaintiff, if the Trades Council chose to allow it. The public could not possibly be deceived by C. D. Kenny Co. selling their merchandise in bags made by defendant, instead of by the plaintiff, and it might work a great hardship on that company if in fact it has for years been using this form of advertisement of its merchandise, if the plaintiff, simply because he furnished the bags and printed the labels on them, can control it by registering the form with the Secretary of State. Some competitor of C. D. Kenny Co. might buy the right from the plaintiff, and by the use of the form accomplish one of the principal things the law of trade marks seeks to prevent—impose on the public, as well as on the company. This statute undertakes to make the certificate of the Secretary proof of the right of the party receiving it to adopt the label, and, if the plaintiff's theory is correct, not only the defendant and other dealers in paper bags that C. D. Kenny Co. might buy from are criminally liable, but that company itself is liable, for using an imitation of a label which, apparently according to the bill, they have been using for years on the paper bags and possibly have adopted that form to advertise their goods, in ways other than on the bags.

In *Robertson* v. *Berry*, 50 Md. 591, it was held that a property right may be acquired in the devices, emblems and title pages of an almanac *by adoption and user*, without the derivation of a *legal* title from the original owner. In *Eddleston* v. *Vick*, 18 Jurist 8, cited by JUDGE MILLER in the above case, it

was held "that the right of property in certain labels or engraved papers or wrappers in which pins manufactured by the plaintiff were put up could be acquired *by user alone*." JUDGE MILLER in commenting on it said, "The plaintiff in that case was not the original inventor, or proprietor of the labels or engraved papers or wrappers, but claimed from the assignees in bankruptcy of a former partner of the original proprietor and inventor. He had, however, carried on business and used the labels for a period of more than eleven years, and by this alone he was held to have acquired a right of property in them." He also quoted with approval from *Canal Company* v. *Clark*, 13 Wallace, 322, where the Supreme Court said, "Undoubtedly words or devices may be adopted as trade marks, which are not original inventions of him who adopts them, and Courts of equity will protect him against any fraudulent appropriation or imitation of them by others." Those were cases where the plaintiffs were relying on *the use* of trade marks *to enforce* their rights as plaintiffs in Courts of equity, and when it can be seen from the bill and exhibits that others may *thus* have acquired rights against one seeking the aid of a Court of equity it behooves the Court to be very cautious about giving such aid, before there has been an opportunity to investigate and ascertain the rights of the parties.

In *Witthaus* v. *Mattfeldt*, 44 Md. 303, JUDGE ROBINSON said, in speaking of trade marks, "*In order to justify the interposition of a Court of equity by writ of injunction, this right ought to be established by the most satisfactory proof.*" There the question was whether the party who claimed protection for a trade mark was in fact entitled to it, as there was evidence that a very similar device had been used by another sometime before. Testimony had been taken but as it left the matter in doubt the Court refused an injunction, even after hearing.

We do not deem it necessary to determine whether that part of the Act which refers to the effect to be given to the certificate of the Secretary of State is unconstitutional, as claimed by the appellant, but we are satisfied that the bill does not show the plaintiff to be so clearly entitled to control the

use of the label as to justify the Court in issuing an injunction before giving the defendant an opportunity to be heard, but on the contrary the bill and exhibits leave the plaintiff's right to it in too much doubt to admit of such a summary proceeding. The statute may doubtless be a useful one in many cases, to protect rights and prevent frauds, but when sufficient appears in the bill and exhibits to suggest that great injustice may be done, not only to the defendant but to those not parties to it, great caution is required of Courts in granting an injunction before hearing, especially when no urgent necessity is apparent for such a course. Being of the opinion that this order should not have been passed it will be reversed, but the cause will be remanded, so the rights of the parties can be properly determined, after testimony is taken, or such other proceedings adopted as may be desired by the parties and sanctioned by the Court.

> *Order reversed and cause remanded,*
> *the appellee to pay the costs in this*
> *Court and the costs below to abide*
> *the final result of the case.*