Wilmer, Trustee *vs.* Thomas, *et al.*

(Decided 17th June, 1891.)

---

SKIPWITH WILMER, Trustee *vs.* DOUGLAS H. THOMAS, CHRISTIAN DEVRIES, and CHARLES C. HOMER, Committee, representing Creditors of the DRUID MILLS MANUFACTURING COMPANY OF BALTIMORE COUNTY.

*Manufacturing Corporation—Assignment for Benefit of Creditors — Good-will — Trade-mark — Trustee's Sale — Advertisement—Report of Sale.*

An insolvent corporation assigned and conveyed to W. as trustee "all its estate and property of whatever kind and wherever situated," in trust for the benefit of creditors, with power to sell either at public or private sale. The trustee advertised the property for sale at public auction, and in the advertisement he described the property as the old-established and valuable cotton-duck mills, at Woodberry, well known as "Druid Mills" containing a stated number of spindles and looms in full operation, and adding, after full description of the particulars of the plant, "that the machinery is of the most modern, and is constructed for the manufacture of all numbers, widths, and weights of cotton duck, awnings, stripes, yarns, twines, &c.—all the well known Druid Mil s brand." The trustee sold the property under this advertisement, and according to the foregoing description; and in his amended report of the sale he stated that he "offered at public sale the well known Druid Mills, as then in full operation, and a going concern, with all the real and leasehold property, machinery, and plant, together with the good-will and business of the said Druid Mills Manufacturing Company."
HELD:

Wilmer, Trustee *vs.* Thomas, *et al.*

1st. That the deed of assignment, by legal operation, passed the good-will of the business, with the brand or trade-mark thereof, with the right and power in the trustee to sell the same with the manufacturing establishment.

2nd. That, under the advertisement of sale, the trustee sold the good-will and trade-mark of the business to the same full extent as they came to him under the assignment; and the purchasers, upon the ratification of the sale, would acquire the exclusive right to such good-will and trade-mark of the business, as fully and in like manner as the same were used and enjoyed by the manufacturing company before the assignment.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Skipwith Wilmer,* and *Randolph Barton,* for the appellant.

*Robert D. Morrison,* (with whom were *Howard Munnikhuysen,* and *Nicholas P. Bond,* on the brief,) for the appellees.

The following authorities were referred to : *Cruttwell vs. Lye,* 17 *Ves.*, 335; *Menendez vs. Holt,* 128 *U. S.*, 522; *Smith vs. Gibbs,* 44 *N. H.*, 343; *Boon vs. Moss,* 70 *N. Y.*, 473; *Morgan vs. Perhamus,* 36 *Ohio,* 522; *Bell vs. Ellis,* 33 *Cal.*, 624; *Howe vs. Searing,* 19 *How. Pr.*, 26; *Dwight vs. Hamilton,* 113 *Mass.*, 175: *Ginesi vs. Cooper & Company,* L. R., 14 *Ch. Div.*, 596; *Williams vs. Wilson,* 4 *Sandf. Ch.*, 379; *Young vs. Jones Bros. & Co.,* 3 *Hughes,* 275; *Bradley vs. Norton,* 33 *Conn.*, 158.

ALVEY, C. J., delivered the opinion of the Court.

The only question presented on this appeal is, whether the purchasers of the Druid Mills manufacturing property

at the sale thereof by the trustee, under and by virtue of a deed of assignment made by the manufacturing company for the benefit of creditors, will acquire, with the property purchased by them, the right to the good-will and business of the insolvent corporation, including the brand or trade-mark used by the company to mark the goods manufactured by it before the assignment?

By the deed of assignment, dated the 12th of December, 1890, the Druid Mills Manufacturing Company, an insolvent corporation, assigned and conveyed to the appellant, as trustee, "all its estate and property *of whatever kind* and wherever situated," in trust for the benefit of creditors, with power to the trustee to sell, either at public or private sale, and on such terms as might seem best for the interest of the creditors.

The trustee advertised the property for sale at public auction; and in the advertisement he described the property as the "old established and valuable cotton duck mill at Woodberry, well known as 'Druid Mills,' containing about 12,000 spindles and 200 looms, in full operation;" and adding, after full description of the particulars of the plant, "that the machinery is of the most modern, and is constructed for the manufacture of all numbers, widths and weights of cotton duck, awning, tripes, yarns, twines, &c., all the well known Druid Mills brand."

The trustee sold the property to the appellees under this advertisement and according to the foregoing description; and in his amended report of the sale, he states that he "offered at public sale the well known 'Druid Mills' as then in full operation and a going concern, with all the real and leasehold property, machinery and plant, together with the *good-will and business* of the said Druid Mills Manufacturing Company, of Baltimore County, subject to the operation and effect of a certain mortgage described in the advertisement of sale; and that he then

and there sold the same to Douglas H. Thomas, Christian Devries and Charles C. Homer, as a committee representing the creditors of the said company, at and for the sum of $120,000, that being the highest bid."

These purchasers, upon the report being made, came into Court, and while admitting the facts stated in the trustee's amended report, objected to the ratification of the sale, upon two grounds: 1st. That the deed of trust or assignment did not assign or transfer to the trustee the right to sell and convey to the purchasers of the Druid Mills property the exclusive right to continue the business and to the use of the brand or trade-mark of the company; and, 2ndly, That the advertisement of sale did not distinctly state that the brand and trade-mark of the company would be offered for sale. Upon these exceptions an order *pro forma* was passed setting aside the sale as reported, and the trustee has appealed.

That the good-will of an established business, as also the brands or trade-marks used to distinguish and specially denote the product of manufacture of the establishment, are property, and form the subjects of contract and sale, is a principle too well settled to need the citation of authorities for its support. Indeed it is often the case, that a large portion of the intrinsic marketable or assessable value of a manufacturing establishment consists in the good-will maintained by it, and in the brands or trade-marks to which it has acquired an exclusive use, by which to denote the origin and make of its goods when placed upon the market. And so important a contribution to the value of the establishment are these elements or accessories of the business, that in the sale or assignment of such manufactory or business establishment, to be continued as formerly, the sale or transfer of such an establishment ordinarily carries with it, by reasonable intendment or implication, the right to such good-will and trade-mark, as incidents to or accessories

of the business carried on by the establishment. This would now seem to be settled by a great preponderance of authority, though after a considerable conflict of judicial opinion.

This Court, in the case of *Witthaus vs. Mattfeldt & Co.*, 44 *Md.*, 305, has said that where a trade-mark is used to designate the place, and the person by whom the goods are made, the right to such trade-mark passes to the purchaser upon the sale and transfer of the business and manufactory at which the goods are made. And the Supreme Court of the United States, in *Kidd vs. Johnson*, 100 *U. S.*, 617, 620, in speaking of the right to dispose of a trade-mark, in connection with a business establishment, said : "As to the right of Pike to dispose of his trade-mark in connection with the establishment where the liquor was manufactured, we do not think there can be any reasonable doubt. It is true, the primary object of a trade-mark is to indicate by its meaning or association the origin of the article to which it is affixed. As distinct property, separate from the article created by the original producer or manufacturer, it may not be the subject of sale. But when the trade-mark is affixed to articles manufactured at a particular establishment and acquires a special reputation in connection with the place of manufacture, and that establishment is transferred either by contract or operation of law to others, the right to the use of the trade-mark may be lawfully transferred with it. Its subsequent use by the person to whom the establishment is transferred is considered as only indicating that the goods to which it is affixed are manufactured at the same place and are of the same character as those to which the mark was attached by its original designer. Such is the purport of the language of Lord CRANWORTH in the case of *Leather Cloth Company vs. American Leather Cloth Company*, 11 *Ho. L. Cas.*, 523; see also *Ainsworth vs. Walmesley*, 44 *L. J.*, 355;

and *Hall vs. Barrows,* 10 *Jur. N. S.,* 55.'' And in addition to the cases thus referred to, see the recent cases of *Lawrence Manf. Co. vs. Tennessee Manf. Co.,* 138 *U. S.,* 537, and *Symonds, et al. vs. Jones,* 82 *Me.,* 302.

The trade-mark or brand used by the Druid Mills Manufacturing Company was simply "Druid Mills," imprinted upon their goods; and while there is no question made as to whether. or not such mark or imprint constitutes a legal brand or trade-mark such as will be protected, the questions made by the exceptions are, whether that or any other valid brand or trade-mark used by the company to designate and identify its manufacture, passed to the trustee by the deed of assignment; and if it did pass, then, whether by the terms of the advertisement of sale, the right to such brand or trade-mark passed to the purchasers of the manufacturing establishment as sold by the trustee?

The deed of assignment transferred to the trustee all the property of the assignor of *whatever kind* owned by it. This was certainly broad enough to include the property in the good-will of the business, and in the brand or trade-mark of the company. All the property in the business and the plant was assigned, and we can have no doubt but that it was intended that the important accessories of good-will and the brand should pass. It can hardly be supposed that it was intended that the manufacturing establishment should be sold by the trustee without them; as such sale could not be otherwise than greatly to the loss and prejudice of the creditors of the company. It was manifestly the intention and desire of the assigning company that the manufacturing establishment should be sold by the trustee to the best advantage, and to be operated by the purchasers; and the fact that the good-will and trade-mark or brand were not mentioned *eo nomine* in the deed of assignment, in no manner excludes the construction that

they did pass to the trustee. For as laid down by *Upton*, in his work on the *Law of Trade-Marks, page* 53, "There can be no doubt that a contract, by which a manufacturer disposes absolutely of his business, and vests in another the right to manufacture the goods, which he has before produced, and which have become known in the market by a distinguishing trade-mark, *though it were silent upon the subject of such trade-mark*, by necessary implication, vests in the purchaser the exclusive right to its use as it was before used."

The terms of transfer employed in the assignment before us are not less comprehensive than those employed in bankrupt or insolvent laws, which declare what property of the bankrupt or insolvent shall pass to the assignee; and yet, in cases occurring under those laws, it has been repeatedly held that the right to a trademark, not personal in its character, but which denotes simply the place or establishment at which the goods are manufactured, passes to the assignee. As an instance of this, we may refer to the case of *Warren vs. Warren Thread Co.,* 134 *Mass.,* 247. The insolvent law of Massachusetts provided that "the assignment shall vest in the assignee all the property of the debtor, real and personal, which he could have lawfully sold, assigned or conveyed." Upon this provision of the insolvent law, the Supreme Court of that State held, that as the trademarks there involved were designs or symbols designating the place or the establishment at which the thread was manufactured, and not implying any peculiar personal skill in the manufacturer designing them, they passed to the assignee of the insolvent. In that case the Court said: "Under this statute, all the plaintiff's property which he could assign passed to his assignee. It includes, *ex vi termini,* his manufacturing establishment, machinery, tools and fixtures, manufactured goods, and the right to use the trade-mark in connection

Wilmer, Trustee *vs.* Thomas, *et al.*

with the establishment and goods." And if a trade-mark will pass in such case, there can be no reason why it should not pass in a case such as the present, where the object of the assignment is virtually the same as that provided for by the insolvent law, and where the terms of the assignment are equally comprehensive as those declaring the effect of the assignment under that law. There are many cases to the same effect as that just referred to, but to which we need only refer by name. *Hudson vs. Osborne*, 39 *L. J. Ch., N. S.,* 79; *Pepper vs. Labrot*, 8 *Fed. Rep.*, 29; *Atlantic Milling Co. vs. Robinson*, 20 *Fed. Rep.*, 217.

And having determined that the deed of assignment, by legal operation, passed the good-will of the business, with the brand or trade-mark thereof, with the right and power in the trustee to sell the same with the manufacturing establishment, we can perceive no difficulty in holding that, under the advertisement of sale, the trustee sold the good-will and trade-mark of the business, to the same full extent as they came to him under the assignment. They formed part, though but incidents, of the property assigned to him; and the purchasers, upon the ratification of the sale, will acquire the exclusive right to such good will and trade-mark of the business, as fully and in like manner as the same were used and enjoyed by the manufacturing company before the assignment.

It follows that the *pro forma* order appealed from must be reversed.

*Order reversed, and*
*cause remanded.*

(Decided 17th June, 1891.)