## JOHN E. BURNHAM *v.* MELVIN J. BURNHAM.

*Good Will of Partnership—Receivers' Sale—Consent Decree.*

The good will, trade marks, and like accessories to an established business are property and form the subjects of contract and sale, and the court may order their sale by receivers, with other property of a partnership.                    pp. 152, 153

Where one partner in an ice distributing business filed a bill against the other partner, asking for the appointment of a receiver and the sale of the land, equipment, facilities, and good will of the firm, and defendant denied the allegations of the bill and asked for its dismissal, but no testimony was taken, nor anything done by defendant in opposition to the appointment of a receiver or a sale, and the decree, which appointed as receivers the respective counsel of the parties, with directions to sell the firm property, including its good will and trade routes, was directed by both such counsel to be filed, the sale of the trade routes and good will was not, as regards defendant partner, so involuntary as to permit him to continue, against the objection of the purchaser, the plaintiff, to solicit and sell on the trade routes of the firm to its former customers.

pp. 153-155

*Decided June 8th, 1927.*

Appeal from the Circuit Court for Baltimore County, In Equity (PRESTON, J.).

Bill by Melvin J. Burnham against John E. Burnham, followed by a petition by said plaintiff, asking for an accounting, and seeking to restrain sales by defendant over certain trade routes. From a decree granting an injunction as prayed in the petition, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Abram C. Joseph,* with whom were *Daniel C. Joseph* and *John J. Timanus* on the brief, for the appellant.

*Henry H. Dinneen,* with whom was *Harry M. Benzinger* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, Melvin J. Burnham, and his brother, John E. Burnham, the appellant, formed a partnership in the spring of 1924, under the firm name of Melvin J. Burnham & Brother, for the manufacture, sale, and distribution of ice in Baltimore County.

The firm bought a lot of land near Chattolanee, erected thereon a manufacturing plant and thereafter manufactured, sold, and distributed ice to their customers in that vicinity. After a period of about a year, differences arose between the brothers concerning the management and operation of the business, and these differences becoming more acute, Melvin J. Burnham, in January, 1926, filed his bill against John E. Burnham, asking among other things: (1) That if necessary a receiver or receivers be appointed to take over the business of the firm and manage and operate the same pending the further order of the court. (2) That pending the final hearing and determination of the suit an injunction be issued restraining John E. Burnham from dissipating any of the assets of said partnership then in his hands and requiring him to pay into court or to the receiver or receivers to be appointed, the money, both cash and checks, then in his hands. (3) That a decree be passed authorizing and directing the sale of the "land, building, equipment, facilities and good will of the said partnership," either at public or private sale, as the court might direct, to the end that the money derived therefrom might be divided between the members of the firm in accordance with their respective equities in the property of the firm.

The defendant filed an answer to the bill, in which he denied many of its essential allegations, and averred that the appointment of receivers was not necessary, as the differences

between himself and Melvin J. Burnham could be amicably
adjusted if the latter would "render a statement of his man-
agement of the partnership", which had not been done, and
the defendant asked that the relief prayed for by the plaintiff
be refused and the bill dismissed.

No testimony was taken, as shown by the record, but the
cause was submitted, as stated in the decree passed on the
10th day of March, 1926, upon the bill and answer.

The decree so passed appointed John J. Timanus and
Henry H. Dinneen, counsel of the respective parties, as re-
ceivers, with the power and authority to take charge and
possession of the property and effects of said partnership, and
to collect the debts owing to it, and the members of the firm
were ordered to yield up and deliver to the receivers so ap-
pointed the property and effects of the partnership, subject
to the further order of the court. The decree further ordered
"that the real estate, plant, machinery, equipment, motor
trucks, and trade routes and good will of the partnership
* * * be sold by said receiver" in the manner and upon the
terms therein stated. Upon the back of the decree is found
the following endorsement:

"Mr. Clerk:
        "Please file.

                "Henry H. Dinneen,
                        "Attorney for Plaintiff.
                "John J. Timanus,
                        "Solicitor for Defendant."

The property of the firm was thereafter, under the decree,
offered at public sale, and sold on April 5th, 1926, to Melvin
J. Burnham, at and for the sum of thirty-one thousand dol-
lars. In the advertisement of sale "the trade routes and good
will of the ice manufacturing business of Melvin J. Burnham
& Brother" were specifically mentioned as part of the prop-
erty to be sold. The sale when made was reported to the
court, and was finally ratified and confirmed on May 5th,
1926, though such report is not in the record.

On June 15th, 1926, after the passage of the decree for

the sale of the partnership property and after the final ratification of the sale made under it, an agreement was entered into between Melvin J. Burnham and John E. Burnham, by which it was agreed that, in the account to be stated by the auditor, the receivers were to be charged with the amount of sales of said property, the amount of collections made by them and all other assets of the firm coming into their hands belonging to it; and by such agreement it was further agreed "that in the distribution, in addition to the one-half which is to be allowed Melvin J. Burnham, the said Melvin shall be allowed out of the said John E. Burnham's share, the sum of $4,371.84, less $201.50," or $4,170.34.

As shown by the docket entries, a special auditor's report and account, which does not appear in the record, was filed and finally ratified on July 16th, 1926.

It is disclosed by the record that, after the sale of the plant and the property of the firm to Melvin J. Burnham, John E. Burnham continued to buy ice at said plant and to sell and distribute it to the persons upon the route which he had formerly served and supplied during the existence of the co-partnership, for at such time the territory in which their customers lived was divided into two routes. Those upon one were served and supplied by John E. Burnham, while those upon the other were served and supplied by Melvin J. Burnham.

Melvin J. Burnham took the position that, as he had become the purchaser not only of the plant, but of the trade routes and good will of the firm, composed of himself and his brother, John E. Burnham could not rightfully and lawfully continue to sell and distribute ice to the former customers of the firm upon said routes; and because of the refusal of John E. Burnham to discontinue serving such customers with ice, Melvin J. Burnham, on July 16th, the day upon which the audit was finally ratified, filed his petition asking that John E. Burnham account to him for the profits that he had realized upon the sale and distri-

bution of the ice claimed to have been wrongfully and unlawfully sold and distributed by him to the customers of the old firm, and further that he be restrained and enjoined from continuing the ice business on the trade routes sold to the petitioner, and that John J. Timanus and Henry H. Dinneen and each of them be restrained from paying over to said John E. Burnham the amount audited to him by the auditor in the account filed by him, which was finally ratified and confirmed.

In his petition, Melvin J. Burnham alleged the sale of the property of the firm to him for the sum of thirty-one thousand dollars, and its final ratification by the court, which sale he claimed passed to him not only the real estate and other property and effects of the firm, but also the trade routes and good will of the firm, which were mentioned both in the decree and in the advertisement, as well as in the report of the sale, which was thereafter finally ratified and confirmed. The petition further alleged that John E. Burnham had no money or property other than that distributed to him by the audit and that, if the same were paid him, the plaintiff would be unable to collect the alleged profits realized by the defendant from the alleged wrongful sale of ice to the customers of the firm. To this petition the defendant filed a combined demurrer and answer. The demurrer was overruled and testimony was taken on the petition and answer, though chiefly upon the question of the alleged profits said to have been made by the defendant upon the ice sold by him to the customers of the firm.

At the conclusion of the testimony the court, on October 20th, 1926, passed its decree, by which it adjudged, ordered, and decreed that Melvin J. Burnham, purchaser at the receiver's sale, had thereby acquired said trade routes and good will of the firm of Melvin J. Burnham and John E. Burnham; and by said decree John E. Burnham was restrained and enjoined from "further soliciting, selling or delivering any ice to any one of the customers, who, prior to the 6th day of May, 1926, were the customers of the

ice manufacturing business of the said partnership known as Melvin J. Burnham & Brother, including all individual and other purchasers of ice, whose residence or place of business were upon the customer's rolls served either by the said Melvin J. Burnham or John E. Burnham prior to the 6th day of May, 1926. It being the intended purpose of this decree in no manner to affect the right of the said John E. Burnham to conduct the ice business in Baltimore County or elsewhere so long as he refrained from inviting, soliciting or selling any of the customers on the aforesaid trade routes or soliciting them to deal with any ice manufacturer or vendor other than the said Melvin J. Burnham." But it was further ordered and decreed that the "said claim of the said Melvin J. Burnham for damages or an accounting by way of profits from the said John E. Burnham for the period during which he has operated said route since the 6th day of May, 1926, be and the same is hereby denied, and that the said Melvin J. Burnham and John E. Burnham each pay one-half the costs of this proceeding subsequent to the ratification of the auditor's account, July 16th, 1926."

It is from that decree of October 20th that the defendant has appealed to this Court.

It is now well settled that the good will, trade marks, and like accessories to an established business are property and form the subjects of contract and sale. As said by this Court, speaking through Judge Alvey in *Wilmer v. Thomas,* 74 Md. 485: "So important a contribution to the value of the establishment are these elements or accessories of the business, that in the sale or assignment of such manufactory or business establishment, to be continued as formerly, the sale or transfer of such an establishment ordinarily carries with it, by reasonable intendment or implication, the right to such good-will and trade-mark, as incidents to or accessories of the business carried on by the establishment. This would now seem to be settled by a great preponderance of authority, though after a considerable conflict of judicial opinion."

In 12 *Ruling Case Law,* it is said: "Where the tangible property sold on execution, or by a receiver, or an assignment for the benefit of creditors is made and the trustee sells the property, intact, it appearing that the good-will is not personal in its character and that it was intended that the purchaser should succeed thereto, or the nature of the property is such that it would be of much reduced value apart therefrom, the good-will passes to the purchaser with the other assets of the business without an express mention thereof." In support of this statement of the law are cited *McFarland v. Stewart,* 2 Watts (Pa.) 111; *Snyder Mfg. Co. v. Snyder,* 54 Ohio State, 86; *Fish Brothers Wagon Co. v. La Belle Wagon Works,* 82 Wis. 546; *Wilmer v. Thomas,* 74 Md. 485.

In the case before us the good-will and trade routes were sold by the receivers under the decree of the court, in which they were specifically mentioned and decreed to be sold, and it cannot, we think, be successfully contended, under the great weight of authority, that the court was without jurisdiction to pass such decree.

The next question to be considered is the effect of the sale of such good-will and trade routes in respect to the rights of the defendant, after such sale, to solicit and sell to the former customers of the firm.

It is contended by the appellant, defendant below, that the sale of the firm's property by the receivers under the decree of the court was an involuntary sale of his interest in the property of the firm, or a sale to which he never gave his consent, and such being the character of the sale, he was not prevented thereby from soliciting and selling to the former customers of the firm.

It is true that the law recognizes a difference as to the rights of a vendor in dealing with his former customers where the sale is voluntarily made by him or with his consent, and where it is involuntarily made and against his consent.

In *Von Bremen v. MacMonnies,* 200 N. Y. 41, it is said: "The good-will which the owner thereof parts with *in invitum,*

as in bankruptcy proceedings or by operation of law, as in the liquidation of a partnership by the lapse of time or its termination pursuant to the articles of co-partnership, is a lesser property than the good-will which is the subject of a voluntary sale and transfer by the owner for a valuable consideration. In the first class of cases the former owner remains under no legal obligation restricting competition on his part in the slightest degree; in the second class of cases the former owner, by his voluntary act of sale, has excluded himself from competing with the purchaser of the good-will to the extent of having impliedly agreed that he will not solicit trade from customers of the old business. To this extent this good-will is a more valuable property than the good-will of a business which goes to a trustee in bankruptcy, or a receiver or survivor of a partnership in liquidation. The good-will which is the subject of a voluntary sale is therefore a different thing from the good-will which the owner parts with perforce or under compulsion."

The case at bar does not, we think, fall within the class of cases last named. In this case the firm was engaged in the manufacture, sale and distribution of ice in the vicinity of its plant, and in the operation of its business it carried its ice to the homes or places of business of its customers, and it was there sold and delivered to them. In so operating they had certain well defined routes, over which the members of the firm or its employees passed every day, or at stated intervals, in serving its customers. The use of these trade routes, uninterfered with by the members of the firm, upon its dissolution, is of great value and importance to the purchaser of the property, as the use of them is so inseparably connected with the successful conduct of the business, and to permit the defendant to solicit and sell ice to the former customers upon these routes would largely destroy the value of their use to the purchaser. It is true that the proceedings in this case were instituted because of the differences existing between the members of the firm in the management of its business, and the defendant, by his answer to plaintiff's bill asking for the appointment of receivers and for the sale

of the property, resisted the plaintiff in the relief sought by him, to the extent of denying the allegations of his bill and asking for its dismissal, but thereafter no testimony was taken or anything done by the defendant in opposition to the appointment of receivers or the sale of property. On the contrary the case was submitted upon bill and answer, and a decree was passed appointing as receivers the respective counsel of the parties, with directions to them to take over and sell the property of the firm including its good-will and trade routes. Not only was this done, but the receivers, upon the passage of the decree, asked, in their capacity as counsel for the respective parties, that the clerk should file it, strongly indicating that the passage of such decree so authorizing said sale was done by and with the consent of the parties, both plaintiff and defendant. The property advertised to be sold at public sale included the good-will and trade routes of the firm, which, as we have said, were sold, and the sale finally ratified and confirmed.

Upon all the facts in this case we cannot escape the conclusion that the sale of good-will and the trade routes of the firm was made with the consent of the defendant, he knowing full well that a sale thereof would necessarily increase the amount of sales in which he would share with his brother, the other member of the firm.

As stated in the decree appealed from, however, John E. Burnham was restrained from "soliciting, selling or delivering any ice to any one of the customers who, prior to the sixth day of May, 1926, were the customers of the ice manufacturing business of the said partnership * * * including all individuals and other purchasers of ice whose residence or place of business were upon the customers' rolls, served either by the said Melvin J. Burnham or John E. Burnham prior to the sixth day of May, 1926. It being the intended purpose of this decree in no manner to affect the right of the said John E. Burnham to conduct the ice business in Baltimore County or elsewhere, so long as he refrain from inviting, soliciting or selling any of the customers on the afore-

said trade routes, or soliciting them to deal with any ice manufacturer or vendor, other than the said Melvin J. Burnham."

Construing this decree to mean that John E. Burnham shall refrain from soliciting and selling, on said trade routes, ice to the former customers thereon of said firm, we find no error in said decree.

The decree appealed from will be affirmed.

*Decree affirmed, with costs.*