IRVIN PRITZKER *v.* BERNARD E. STERN, ET AL.

[No. 46, October Term, 1946]

*Decided January 9, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Louis S. Ashman* for the appellant.

*Hiram C. Griffin and Leo M. Alpert*, with whom was *J. Royall Tippett, Jr.*, on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

On May 20, 1946, Samuel J. Topaz filed a bill against appellant and Samuel Horwitz, alleging *inter alia* that: Since 1923 plaintiff and defendants have been partners with equal interests, in the cleaning and dyeing business, trading under the name Eagle Dry Cleaning & Dyeing Works; irreconcilable differences have arisen between plaintiff and defendants so as to make the continuation of the parenership absolutely impossible; the parties are the owners of the leasehold property 2656-2658 Pennsylvania Avenue, where the business is conducted, and also have machinery, fixtures, equipment, and trucks to operate the business; the appointment of a receiver is absolutely necessary in order that the assets of the partnership may be conserved, and may be divided; it is the express will of plaintiff that the partnership be dissolved and a receiver appointed to conserve, collect and marshal the assets and to divide them between the parties after payment of debts, charges and costs. The bill prayed (a) appointment of a receiver to preserve or dispose of or sell the assets under the direction of the court, and (b) that the part-

nership may be declared dissolved and its property of every kind and character may be sold and applied to payment of debts and the residue divided. On June 3d appellant answered, admitting all the above allegations and consenting to "the appointment of a receiver as prayed." The same day Horwitz also answered, "joining in the prayers of the bill" for a receivership. On June 11th an order was passed, appointing receivers (plaintiff's solicitor and one · of appellant's solicitors) and authorizing them to continue the business. On June 14th, on petition of the receivers, they were authorized to employ counsel (Horwitz's solicitor and one of appellant's solicitors).

On June 14th, on petition of the receivers, they were authorized "to sell, at public sale, all of the leasehold property, machinery, equipment, supplies, automobile trucks and other physical assets" coming into their possession, provided notice be published "once a week, for at least three successive weeks" before the sale. On June 16th and 23d the property was advertised for sale on July 8th.

On June 25th, two weeks after the appointment of receivers, appellant through new counsel filed a petition (a) for rescission of the orders of June 11th and 14th appointing receivers and authorizing a sale and (b) to restrain the receivers from further advertising the sale. Among the reasons alleged for such action were that: the receivership "was hurriedly agreed to" by appellant "largely through his own lack of education and ignorance of its full consequences at a time when he was greatly aggravated and unnerved by the family bickering between him and the other partners—all brothers-in-law"; appellant "was not consulted as to the choice of receivers * * *, nor as to the order of sale, nor as to the contents of the * * * advertisements—all while he and * * * Horwitz were operating the business safely and profitably—as they are continuing to do under the jurisdiction of the * * * receivers * * *, although [appellant] believes and avers that his former attorney, * * * Stern, acted

in good faith at all times; * * * there is a pending dispute regarding the title to the * * * adjoining and indispensable Bruce Alley property, and a good title thereto cannot be obtained at this time; the perfectly solvent business is operating safely and profitably as usual except for the technical supervision of the receivers; the receivership is due entirely to the uncalled for family bickering of [appellant] and his partners and all their wives—two of whom are sisters—and the delay of sale may bring them to their senses and help them to realize that a hurried forced sale * * * will likely deprive all three families of their necessary livelihood and wreck a perfectly solvent useful and profitable business * * *; * * * the manner and time of the sale, if a sale becomes indispensable, should be in keeping with the best interests of all the partners, especially since [appellant] is now without means for bidding on the same." The petition also specifies alleged defects and inconsistencies in the order of sale and the advertisements. Attached to this petition was a form of order (a) restraining the sale and discontinuing the advertising and (b) requiring the receivers to show cause why the other relief prayed (viz., recission of the appointment of receivers) should not be granted. On June 25th this "show cause order" was "refused."

On June 26th appellant appealed (1) from the order of sale of June 14th and (2) from the order of June 25th which "refused" the "show cause order." The same day the order for sale was stayed on a *supersedeas* bond for $500. The appellees have moved to dismiss both appeals. Both motions must be overruled, though the meaning of the second appeal is not altogether clear. We construe it as an appeal from refusal of restraint of the sale as well as of the show-cause portion of the order. There is no appeal from the order of June 11th appointing receivers, but appellant characterizes his second appeal as an "indirect appeal" from that order. An order appointing a receiver, an order for sale (Art. 5 Sec. 31) or an order refusing an injunction (Sec. 35) is appealable, but not an order refusing

to rescind an order appointing a receiver. *Monumental Mut. Life Ins. Co. v. Wilkinson,* 100 Md. 31, 32 59 A. 125.

The appointment of receivers (by consent) or the selection of receivers is not before us for review. Appellant complains of the selection of the solicitors for the partners as receivers and counsel for the receivers. We are not unaware of the risk of conflict of duties or interests. If a litigant changes his mind, he may find it necessary to change his counsel, unless a receiver resigns and reverses his own position. But no ideal method of selecting receivers has been discovered, and in Maryland selection of counsel for the litigants or some of them is not infrequent, and has been tolerated by this court. *Bortner v. Leib,* 146 Md. 530, 534, 126 A. 890; *Burnham v. Burnham,* 153 Md. 147, 149, 137 A. 860. In some jurisdictions selection of receivers by the court, independently of suggestions of the litigants, has resulted in evils of "judicial patronage." Statutory provision is made for appointment of public officials as receivers of state banks and trust companies (Art. 11, Secs. 11-14), and insurance companies (Art. 48 A, Secs. 52, 53) and for appointment of receivers of national banks by the Comptroller of the Currency. U. S. Code, Title 12, Sec. 191. 12 U.S.C.A. Sec. 191. Provisions to prevent conflict of interests in bankruptcy and reorganizations have increased the number of lawyers in such proceedings and have evoked complaints both as to excessive expense and as to inadequate compensation of receivers, trustees and counsel. Frequently in railroad receiverships, officers of the debtors have been appointed receivers—not without adverse criticism of this practice but often with successful results. In the C. & O. Canal receivership Judge Alvey appointed outstanding citizens receivers to render a public service. *Brown v. Chesapeake & Ohio Canal Co.,* 73 Md. 567, 585; *State v. Brown,* 73 Md. 484, 491, 21 A. 374. It would not seem wise to appoint a competitor, or feasible to find any one else with special knowledge of the cleaning and dyeing business, to conduct the business temporarily as receiver. Appellant admits that the busi-

ness is being conducted "safely and profitably" "under" the receivers, through appellant and Horwitz.

When three partners agree to dissolve the partnership, one alone cannot by changing his mind prevent a dissolution or a receivership and sale. A partnership at will may be dissolved "by the express will of any partner." Art. 73A, Sec. 31 (b). In that event "Each partner * * * may have the partnership property applied to discharge its liabilities, and the surplus applied *to pay in cash* the net amount owing to the respective partners." (Italics supplied.) Sec. 38. The right of each partner in this respect cannot be denied because some other partner "is now without means for bidding" on the property, or because exercise of the right may be unwise. Lindley on Partnership, 10th Ed., 642-644; *Cf. Kemp v. Waters*, 165 Md. 521, 526, 170 A. 178.

Appellant's other complaints relate to the order for sale or the advertisements. The record is devoid of facts regarding the "adjoining and indispensable Bruce Alley property." Though appellant alleged that "a good title thereto cannot be obtained at this time," at the oral argument he seemed to assert a good title by adverse possession. It is conceivable that if proceedings or negotiations to clear title were pending and near completion, the sale should be delayed pending completion. If, however, no such proceedings are pending, and the partnership merely lacks paper title and assets a possessory title, the normal procedure would be to sell any right, title and interest of the partnership, with an appropriate statement in the advertisement or a reference to the receivers or their counsel for a written statement as to the title. The order of sale covers "all of the leasehold property * * * and other physical assets." The advertisement mentions "real estate," describes the leasehold property, but does not mention the "Bruce Alley property" or describe any real estate.

Trifling errors in an advertisement may be overlooked, if the sale is not injured thereby. Miller on Equity Procedure, Sec. 490. But in drafting orders for sale

and advertisements counsel should aim not at the minimum of accuracy which might pass muster an appeal, but at the maximum of clearness which may insure a fair sale and prevent an appeal to obtain a sort of certificate of title from this court. At the argument it was suggested that discrepancy between the first and second advertisements may be disregarded because, excluding the first advertisement, there would still be three, at weekly intervals, before the sale. We do not think advertisement beginning two weeks and one day before the sale is advertisement "once a week, for at least three successive weeks, before the sale." *Johnson v. Dorsey,* 7 Gill 269, 286.

The order of sale and the advertisements are not models, but in the absence of facts and circumstances, regarding the property, the business and the sale, pertinent to proper terms of sale, we cannot say that the sale should have been peremptorily enjoined. We think both justice and convenience will be best served by remanding the cause, without affirming or reversing the orders appealed from. It ought to be feasible, by conference between the judge and the five lawyers, or if not, by taking testimony, to settle the form of the order of sale and the advertisement. We need not decide whether the order of sale of "physical assets," not expressly including the "business," excludes "good will" and the "trade name," or includes them "as incidents to or accessories of the business carried on by the establishment." *Wilmer v. Thomas,* 74 Md. 485, 489, 22 A. 403, 404, 13 L. R. A. 380. This should be made clear in the order (if inflexible in terms) or in the advertisement. If good will is included, it should also be made clear whether personal good will (in the sense of an obligation of each partner not to complete by soliciting former customers) is included. Good will in this larger sense cannot be included without the consent of each partner. *Burnham v. Burnham,* 153 Md. 147, 153-155, 137 A. 860. A deposit of $15,000 by the purchaser might be sufficient to protect the receivership in permitting the purchaser to take possession pending ratification of the

sale of leasehold property—and real estate, if any. A prospective bidder might, however, prefer not to take such tentative possession but to await final ratification. It would not seem unusual to provide that the receivers should continue in possession until final ratification, conducting the business, either for the benefit of the purchaser or of the receivership, *i. e.*, profits, losses, expenses and interest to be adjusted either to the date of sale or the date of ratification and possession (specifying which). These and other details may be determined by the lower court in the light of all the facts, which are not before us.

We may add that advertisement need not be more verbose. Unless salesmanship requires minute description and enumeration, the law does not require it, but would be satisfied by general (but accurate) language, coupled with reference to a detailed list to be obtained on request and perhaps with express provision for inspection of the premises and property by prospective bidders.

*Motions to dismiss appeals overruled. Cause remanded, without affirming or reversing the orders appealed from, costs above and below to abide the further action of the lower court.*