138

BLONDELL ET AL. *v.* OREM, TRUSTEE ET AL.
(Two Appeals in One Record)

[No. 41, October Term, 1952.]

*Decided December 5, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

140

*Joseph A. DePaul* and *Joseph G. Lindamood, Jr.*, with whom was *Gordon Louk,* in proper person, on the brief, for the appellants.

*Nicholas Orem, Jr.*, with whom were *Duckett, Gill & Orem* on the brief, for the appellees.

MARKELL, C. J., delivered the opinion of the Court.

This is an appeal from an order (*a*) directing payment to petitioner Lightbown of $265.20 paid into the registry of the court pursuant to a decree of August 2, 1949, (*b*) allowing a counsel fee of $150.00 to the trustee under the decree for legal services to himself as trustee in opposing an application for *certiorari* in the Supreme Court of the United States, and (*c*) sustaining demurrers to, or dismissing, or both sustaining demurrers to and dismissing, sundry nondescript answers and petitions of appellants, mentioned by name in the order but not set out in either brief or appendix.

This case originated in a bill of one Turover against appellants and a Mrs. Leapley and husband (both now deceased) for specific performance of a contract of sale of land by the Leapleys to Turover effected by exercise of a written option from the Leapleys obtained by Turover, through Lightbown as a real estate broker, before sale of the same property at the same price, $5,304 less commissions, by the Leapleys to appellants. The court, by its decree of August 2, 1949, granted specific performance against appellants, as purchasers with notice of Turover's prior equity. This court affirmed. *Blondell v. Turover,* 195 Md. 251, 72 A. 2d 697.

Turover's option agreement provided, "If sale is consummated as a result of this option, seller agrees to pay Edward N. Lightbown 5% commission in cash at the time of settlement." Lightbown, though not a party, was the principal witness in the original case. The facts stated in the opinion of this court indicate that the option contract was procured by Lightbown. The decree of August 2, 1949 directed appellants to execute

a deed to Turover and appointed Nicholas Orem, Jr. (plaintiff's counsel) trustee to convey the property to Turover if appellants failed to do so, upon payment by Turover of $5,304, from which costs were to be deducted and the balance to be paid to appellants, "and from which sums shall also be deducted the sum of $265.20, being the one-half of the 10% broker's commissions credited to defendants Louk and Blondell in their purchasers' settlement statement as shown on page 6 of the depositions filed herein, and the sum of $265.20 thus deducted shall be paid by plaintiff into the Registry of this Court; provided, however, that this Court retains jurisdiction in the premises for the purpose of determining who is entitled to receive said sum of $265.20 held in the Registry of this Court, or in the hands of the Trustee hereafter mentioned, and any peron claiming the same may file his petition herein for payment of the same to him, whether or not he has heretofore been a party to this proceeding." Appellant's contract of purchase with the Leapleys provided for a broker's commission of ten per cent, of which half was paid to Dunn & Company, brokers, and half credited to appellants. Appellants thus paid the Leapleys ninety-five per cent of $5,304, out of which the Leapleys paid Dunn five per cent.

After affirmance of the decree, we are informed (though none of the proceedings is before us) that appellants and others filed in the United States District Court a bill against Lightbown, Orem, and Orem, trustee, for injunction against conveyance of the property pursuant to the decree. After dismissal of this bill for want of jurisdiction, another was filed, dismissed on similar grounds, and on appeal to the United States Court of Appeals the dismissal was affirmed. Later application to the Supreme Court for *certiorari* was made and was denied, *Louk v. Friedman*, 342 U. S. 827, 72 S. Ct. 51. Meanwhile this case had been referred to an auditor, counsel fees had been allowed for services in the federal court litigation (except the

application for *certiorari*) and the auditor's accounts making such allowances and allowances for other costs and expenses had been finally ratified and no appeal had been taken. Incidentally the amount on hand out of the $5,304 purchase price had diminished to $3,245.74.

In February, 1952 Lightbown filed his petition for payment to him of the $265.20 paid into the registry of the court pursuant to the decree of August 2, 1949. After the sundry proceedings above referred to, the order now under review was signed on March 27, 1952. It is not clear why in the decree of August 2, 1949 the $265.20 was not ordered paid to Lightbown, in view of Lightbown's testimony in the original case. Nor is it clear why, in view of the provision for further proceedings, Lightbown was asked by his counsel only whether he was the Lightbown mentioned in the option agreement, and whether he had been paid any commission arising out of the option agreement or the sale to Turover or by or on behalf of either of the Leapleys. However, as the court, counsel and litigants well knew, in the original case to which the instant proceedings are supplemental, Lightbown's testimony had shown, as the opinion of this court indicates, that he had procured the option agreement and the resulting sale. Moreover in the instant proceedings he was asked, on cross-examination, "You stated to the court that you brought about the signing of this option. Is that true?", and he answered, "That is true."

By "answers and petitions" appellants separately alleged that Lightbown's testimony at the original trial was "evasive, inconclusive, untrue and incomplete", that since the decree of August 2, 1949, they had "come into possession of conclusive evidence that said testimony of * * * Lightbown was perjured", and prayed a hearing on Lightbown's petition and that appellants "be given opportunity to advance proofs in open court in substantiation of the facts herein sworn on oath." Apparently appellants' major objective in the maze of their proceedings in response to Lightbown's petition was to

set aside the decree of August 2, 1949 on the ground that it was based on perjured testimony of Lightbown. In what respect Lightbown's testimony was perjured, and what is the nature of the new evidence, is wholly undisclosed. In the lower court counsel for one of the appellants said, "If Mr. Lightbown, through his attorney, seeks to find out what the new evidence is, I believe he is entitled to a bill of discovery or to the use of depositions under the discovery rules as set down by the Court of Appeals." This statement aptly presents appellants' nonchalant attitude towards the task of setting aside an enrolled decree. Obviously Lightbown's petition for payment of $265.20 cannot be made to serve the purpose of a bill to set aside the decree of August 2, 1949. Turover is not a party to these supplemental proceedings. Neither facts constituting fraud, nor facts to be shown by newly discovered evidence, nor why the evidence was not discovered three years ago, are stated. Moreover, an enrolled decree cannot be set aside for fraud merely because there was perjured testimony. *Maryland Steel Co. v. Marney*, 91 Md. 360, 373, 46 A. 1077; *Adleberg v. Stryjewski*, 200 Md. 346, 89 A. 2d 592.

The same notion of setting aside the original decree is the basis of appellants' contention that the court would not permit them to cross-examine Lightbown. No question is presented as to the English or the American rule as to scope of cross-examination. Nowhere may a witness be asked, on cross-examination or at any other stage, the color of his eyes—or the color of his testimony in a previous case—for the sole purpose of calling another witness to contradict him, unless in some way the color of his eyes, or his previous testimony, is material in the instant proceedings. The few questions of fact material in the instant proceedings were those that were asked Lightbown and answered, viz., whether he procured the option agreement and the sale and whether he had been paid. The court properly cut off attempts to prove his original testimony "perjured".

144

Besides objecting to Orem's counsel fee for services in opposing the application for *certiorari* in the Supreme Court, appellants filed petitions for "removal" of Orem as counsel for Lightbown and as trustee under the decree, on the ground that he cannot "in all faith to the court, represent both the court as trustee and Mr. Lightbown as attorney." We pass all question as to the power of the court to "remove" an attorney for a litigant in the absence of actual misconduct of the attorney. Whether in appointing trustees under decrees, or receivers, counsel for one or more litigants shall be selected may be a choice of evils—between the risk of trying to serve two masters and the certainty of increased expense. *Pritzker v. Stern*, 187 Md. 499, 504, 51 A. 2d 69. In Maryland the practice of naming counsel as trustees under decrees is almost universal. In a proper case the same person may be allowed commissions as trustee and a counsel fee as attorney. *Taylor v. Denny*, 118 Md. 124, 84 A. 369. In the instant case we see no actual conflict—or risk of conflict—between Orem's duties as trustee and as counsel for Lightbown—or as counsel originally for Turover. The fee of $150 for services in opposing the application for *certiorari* in the Supreme Court is not excessive or improper. As we are unable to imagine any basis for the litigation in the federal courts—still less for grant of *certiorari*—the counsel fee might no doubt have been saved by filing no brief and trusting the Supreme Court to deny *certiorari*. However, appellants could not make this point, and we cannot adopt it as a measure of duty or a guide for conduct for trustees.

*Order affirmed, with costs.*