ERICH L. WITTHAUS *vs.* JOHN B. BRAUN and CHARLES MATTFELDT, trading as MATTFELDT & Co. and CHARLES SCHMIDT and CHARLES H. TROWE, trading as SCHMIDT & TROWE.

*Trade-mark—Assignment of a Trade-mark—When a Court of Equity should not Restrain the use of a Trade-mark.*

Where a trade-mark is used to designate the place and the person by whom the goods are made, the right to such trade-mark passes to the purchaser upon the sale and transfer of the business and manufactory at which the goods are made.

The *mere sale* of a trade-mark, *apart from the article to which it is affixed,* confers no right of ownership, because no one can claim the right to sell his goods as goods manufactured by another. To permit this to be done would be a fraud upon the public.

But where a trade-mark is assigned to the person who manufactured the article to which the trade-mark is affixed, there is no false representation to the public, because the article is still manufactured at the same place and by the same person.

Witthaus *vs.* Mattfeldt & Co., *et al.*

A Court of equity ought not to interfere by injunction to restrain the use of a trade-mark where the testimony in regard to the right to the ownership of such trade-mark is conflicting and contradictory, so that it is no easy matter to determine on which side the weight of evidence preponderates.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken by the complainant below, from a decree of the Circuit Court of Baltimore City, (PINKNEY, J.,) dismissing his bill for an injunction.

The facts are sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*Thomas J. Morris* and *E. Otis Hinkley,* for the appellant.

*Arthur W. Machen,* for the appellees, Mattfeldt & Co.

ROBINSON, J., delivered the opinion of the Court.

The complainant seeks to restrain the appellees, who are manufacturers of smoking tobacco, from making use of a brand, which he alleges to have been the trade-mark of one Moses Falk, of the City of New York, and to the exclusive use of which, he claims to be entitled as the assignee of Falk.

The brand or trade-mark in question may·be described as follows :   A label, in the centre of which is a picture of an Irish harp, with a shamrock on each side of the harp, and below it the words *"Erin. go Bragh;"* on the left of the harp the word " trade," and on the right the word " mark ; " above the harp the words " Genuine Dublin Cut Cavendish," and at the bottom the words " Smoking Tobacco." The label is printed in gold letters on dark green paper.

The right of the complainant to the trade-mark thus described, is founded upon the following assignment:

"NEW YORK, November 5th, 1873.

"In consideration of one cent paid to me, I have this day sold all my smoking tobacco brands to Mr. E. L. Witthaus, of the firm of H. Wilkens & Co., of the City of Baltimore.

MOSES FALK."

The appellees contend that a trade-mark being a mere device or symbol, to designate *the manufacture of an article by a particular person, or at a particular place,* there is no such thing as a right of property in such trade-mark, *apart from the article to which it is affixed, and which it has been used to designate,* and that a purchaser, therefore, can acquire no right of property, by the bare sale of the trade-mark itself.

Conceding this to be so, it is equally well settled, that where a trade-mark is used to designate the place, and the person by whom the goods are made, the right to such trade-mark passes to the purchaser upon the sale and transfer of the business and manufactory at which the goods are made.

Since the cases of *Banks vs. Gibson,* 34 *Beav.,* 566, *Hall vs. Barrows,* 10 *Jurist, N. S.,* 56, *Bury vs. Bedford,* 33 *Law Journal, Ch.,* 465, and *The Leather Cloth Comp. vs. The American Leather Cloth Comp.,* 11 *House of Lords Cases,* 523, this can no longer be considered an open question. In the latter case, Lord CRANWORTH said:

"But I further think that the right to a trade-mark may, in general, treating it as property, be sold and transferred upon a sale and transfer of the manufactory of the goods on which the trade-mark has been used to be affixed, and may be lawfully used by the purchaser."

"In such a case, the use of the trade-mark would indicate only that the goods so marked were made at the manufactory which he had purchased."

Now in this case, the tobacco was manufactured by H. Wilkens & Co. for Moses Falk, and according to his directions, or as termed in the trade, "*by his secret*," and the assignment of the trade-mark under such circumstances *to the manufacturer,* would, in our opinion, bring this case within the principle of the decisions referred to.

The *mere sale* of a trade-mark *apart from the article to which it is affixed,* confers no right of ownership, because no one can claim the right to sell his goods, as goods manufactured by another. To permit this to be done, would be a fraud upon the public. But where as in this case, the trade-mark is assigned *to the person who manufactured the tobacco,* to which the trade-mark was affixed, there is no false representation to the public, because the tobacco is still manufactured at the same place, and by the same person. It is in fact, the same article.

But the difficulty in the case, is in regard to the proof upon which the right of Falk himself to the trade-mark depends. In order to justify the interposition of a Court of equity, by writ of injunction, this right ought to be established by the most satisfactory proof. If the testimony is conflicting and the right doubtful, a Court of equity will not interfere, but leave the parties to their remedies at law.

Falk says the label was designed by him in the latter part of 1867, and that the tobacco was manufactured for him by H. Wilkens & Co., in the latter part of 1868, and that at that time there was no such thing as smoking tobacco called "Dublin Cut Cavendish," sold in small packages.

The testimony of Trowe, Neurath, Schwanebeck, Schneydler and Felgner, tends very strongly to prove that Falk was the original proprietor of the label in question.

On the other hand, it is, we think satisfactorily established, that at the time when Falk claims to have designed

the brand, and for some time prior thereto, a smoking tobacco, known as "*The Dublin Cut Cavendish*," was sold in small packages, and that upon the labels affixed to the packages was the picture of an Irish harp, with the shamrock on each side, and the words "Erin go Bragh" below, all printed in gold letters on dark green paper, and strongly resembling the brand now claimed by the appellant.

In addition to this, Seeman, who was engaged during the late war in supplying sutlers in the army with smoking tobacco, says "that the label which Falk claimed to have designed, was at that time used on smoking tobacco—that he purchased in 1864, tobacco put up in small packages, to which these labels were affixed; and that in the spring of 1868, and also in 1869, he purchased the same tobacco with the same labels of John B. Braun, one of the appellees."

Seitz, who was a manufacturer of smoking tobacco, testifies that the label now used by the appellees, and which the complainant alleges to be an imitation of Falk's trade-mark, was used in 1864 by witness, and that he sold a number of these labels with his stock of tobacco to Braun, one of the appellees, in 1864.

Braun who is produced as a witness on the part of the complainant, says: the label now used by him, is the same which he found together with other labels among the stock purchased by him of Seitz.

It must be admitted then, that the testimony in regard to the right of Falk, to the ownership of this label is conflicting and contradictory, and in fact it is no easy matter to determine on which side the weight of evidence preponderates.

Under such circumstances, we do not think a Court of equity ought to interfere by a writ of injunction, and the decree below will be affirmed.

*Decree affirmed.*

(Decided 8th March, 1876.)