THE CHILDREN'S BOOTERY, A CORPORATION, SAMUEL SA-WILOWSKY, JACOB L. JACOBS AND HYAM JOEL, *Appellants*, v. THOMAS C. SUTKER, TRADING AS THE CHILDREN'S BOOTERY, *Appellee*.

En Banc.

Opinion Filed January 16, 1926.

*George C. Bedell* and *Sabel & Reinstine,* for Appellants;

*Johnson & McIlvaine,* for Appellee.

62

STRUM, J.—In 1920 the appellant, Samuel Sawilowsky, entered the retail shoe business in Jacksonville, dealing principally in children's shoes, stockings and their accessories. As a means of identifying his business before the public, and for the purpose of attracting and retaining patronage, he adopted the trade name ''The Children's Bootery,'' under which name he conducted his business in Jacksonville continuously until August 17, 1922, when he was adjudicated an involuntary bankrupt. The petition in bankruptcy, and the order of adjudication, styled the bankrupt as ''Samuel Sawilowsky, trading as Children's Bootery.''

At the first meeting of creditors, it was resolved: ''That the Trustee be, and he is hereby authorized to sell the assets of the bankrupt at public or private sale and subject to the approval and confirmation of the Referee without any further meeting of creditors or further notice of such sale.'' An order of sale was made in due course by the Referee in Bankruptcy, directing the Trustee to offer the stock of merchandise and fixtures of the above named bankrupt for sale at public outcry, Tuesday, September 26, 1922,'' pursuant to which the Trustee advertised for sale ''the entire stock of ladies', misses and children's shoes, hosiery, findings and store fixtures of Samuel Sawilowsky, trading as Children's Bootery, bankrupt, 115 Main Street, Jacksonville, Florida, subject to confirmation of the Referee.'' The trustee subsequently reported, amongst other things, that at the time and place appointed in the advertisement he ''offered the stock and fixtures (of the bankrupt) together with the good will and the trade name, and the highest and best bid obtainable was from Mr. Thomas C. Sutker for the sum of $10,020.00,'' and recommend that such sale be confirmed. The sale was confirmed by order of the Referee in Bankruptcy on September 27, 1922, in which order the sale

of the "good will and trade name" of the bankrupt was expressly recited. The trustee executed to the purchaser Thomas C. Sutker, who is the appellee here, a bill of sale conveying to Sutker: "the good will and trade name known as The Children's Bootery and identified with the store formerly conducted by the bankrupt, Samuel Sawilowsky, trading as The Children's Bootery, 115 Main Street, Jacksonville, Florida, Duval County. The entire stock in trade of shoes, hosiery, findings and fixtures located in and at the store, 115 Main Street, Jacksonville, Florida, Duval County." On September 30, 1922, the appellee Sutker reopened the store at No. 115 Main Street as a retail shoe store, under the name of "The Children's Bootery." The right to continue the use of such trade name as a designation for that business is claimed by appellee by virtue of the proceedings above referred to in the bankrupt estate of appellant Sawilowsky.

In September, 1922, Sawilowsky, the bankrupt, and his co-appellants Jacob L. Jacobs and Hyam Joel, applied to the Governor of Florida for letters patent incorporating themselves under the laws of Florida with corporate name "The Children's Bootery," for the purpose of operating a retail shoe business, under the management of Sawilowsky, at 103 Main Street, which location is on the same side of the street, and two doors removed from the location of the store which Sawilowsky, prior to his adjudication in bankruptcy, conducted as an individual under the trade name of "The Children's Bootery." Letters patent were issued in due course and the corporation opened its store for business at 103 Main Street, advertising and holding itself out to the public as "The Children's Bootery."

On October 5, 1922, Sawilowsky and his associates Jacobs and Joel, proceeding in the District Court of the United States for the Southern District of Florida, which

was the Court by which Sawilowsky was adjudicated a
bankrupt, procured a rule against Sutker, seeking to have
the bill of sale executed by Sawilowsky's trustee delivered
up for correction by eliminating from the description of
the property thereby conveyed all reference to the good
will of the bankrupt's former business and the trade name
"The Children's Bootery." Sawilowsky and his associates
also filed in the court last mentioned a petition to review
the order of the referee in bankruptcy confirming the sale
of the bankrupt's assets. Upon hearing, the rule was dis-
charged (In re: Sawilowsky, 284 Fed. 158) and the petition
to review was denied (In re: Sawilowsky, 284 Fed. 975),
both of which orders were subsequently affirmed by the
United States Circuit Court of Appeals, Fifth Circuit.
Sawilowsky v. Brown, 288 Fed. 533.

Appellant, The Children's Bootery, a corporation, and
its co-appellants Sawilowsky, Jacobs and Joel, who were
the incorporators of the corporate appellant, on October
11, 1922, exhibited their bill of complaint in the Circuit
Court of Duval County, seeking to have appellee, Sutker,
enjoined from the further use of the name "The Chil-
dren's Bootery." The chancellor ordered a temporary
injunction, as prayed, but later entered a further order
dissolving same. Subsequently, upon the showing made by
the appellee Sutker, who was defendant and cross com-
plainant below, the chancellor entered an order enjoining
appellants, complainants below, from "any use of the
words 'The Children's Bootery' as a trade name in marks,
brands, signs, labels or advertising matter." The Chil-
dren's Bootery, a corporation, Sawilowsky, Jacobs and
Joel, have appealed from the two orders last mentioned.

The right of appellee to use the trade name in question
to the exclusion of appellants depends, first, upon the
meaning and effect of the Bankruptcy Act of 1898, Section

70a (U. S. Comp. Stat. Sec. 9654) ; and, second, upon the regularity and sufficiency of the procedure in the bankrupt estate of Sawilowsky through which appellee Sutker became the purchaser of the bankrupt's shoe business, after which there is to be considered the right of the corporate appellant to carry on its retail shoe business under its own corporate name ''The Children's Bootery'' at the location and under the circumstances hereinabove recited.

The Bankruptcy Act of 1898, Section 70a (Comp. Stat. Sec· 9654), in so far as it is pertinent here, provides:

''The trustee of the estate of a bankrupt * * * shall * · * * be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all .(1) * * * ; (2) interests in patents, patent rights, copyrights, and trademarks; * * * (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him.''

Appellant contends that trade marks and trade names, though entirely distinct from each other, are commonly associated in ordinary thought and parlance, and that the omission of the term ''trade names'' in subdivision (2) of Section 70a, where the bankrupt's interest in patents, patent rights, copyrights and trade marks is specifically mentioned, indicates that the omission was *ex intentione* and that the design of Congress was to preserve to the bankrupt the right to use his former trade name in re-establishing himself in business after his discharge in bankruptcy. Appellants further contend that the omission in subdivision (2) of the section mentioned can not be supplied through the general provisions of subdivision (5), because, applying the rule of *ejusdem generis,* trade names are still excluded from those assets of the bankrupt which pass to the trustee.

The argument of appellants, though unusually forceful, is counter to the settled weight of authority established by many decisions. Trade names, when lawfully acquired and properly identified with the physical properties and good will of a business, are generally recognized as property which may be lawfully transferred by its owner in connection with the business with which they are so identified. As such, under the provisions of subdivision (5) of Section 70a, a trade name, lawfully identified with the business of the bankrupt at the time of his adjudication, would unquestionably pass to the trustee as an asset of the estate, unless an application of the doctrine *ejusdem generis* requires a construction of that section which would exclude trade names from the effect of its provisions.

Literally translated, *"ejusdem generis"* means "of the same kind or species." Briefly stated, the doctrine of *ejusdem generis,* when employed as an aid to statutory construction, is that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated. 19 C. J. 1255, and cases cited. But the rule does not necessarily require that the general provision be limited in its scope to the identical things specifically named. So applied, the rule would render the subsequent general phrase entirely inoperative, and thereby violate another salutary rule of construction, namely, that every part of a statute should, if possible, be sustained and given appropriate effect. Misch v. Russell, 136 Ill. 22; 26 N. E. Rep. 528; 12 L. R. A. 125; State v. Broderich, 7 Mo. App. 19; Strange v. Board of Commissioners, 91 N. E. Rep. 242.

There is a recognized distinction in many respects between a technical trade mark and a trade name, though the terms are sometimes treated by able courts as substantially

synonymous. One of the principal distinctions is that a valid trade name sometimes consists of words which when applied to the merchandise itself are generic or descriptive and hence not susceptible to appropriation as a technical trade mark. It has been held by good authority that a trade mark usually relates principally to the identity of the commodity offered for sale, while, in addition to this, a trade name designates or indicates the source of manufacture or sale of the article or the individuality or identity of its maker or seller, and further, that the law of trade marks is designed pricipally for the protection of the public from imposition while the law with respect to trade names is for the protection of the party entitled to use the name, as well as for public protection. Armington v. Palmer, 21 R. I. 109; 42 Atl. 308; 79 Am. St. Rep. 786; 46 L. R. A. 95; Cady v. Schultz, 19 R. I. 193; 32 Atl. 915; 61 Am. St. Rep. 763; 29 L. R. A. 524; Eastern Outfitting Co. v. Manheim, 59 Wash. 428; 110 Pac. Rep. 23; N. K. Fairbanks Co. v. Lukel (C. C. A.) 102 Fed. 327; 38 Cyc. 764. While this may be true in many cases, instances abound in which a trade mark concerns the individuality or identity of the manufacturer or dealer quite as much as a trade name (See Kidd v. Johnson, 100 U. S. 617; 25 L. Ed. 769), while on the other hand, trade names frequently relate to the identity of the commodity. Hopkins on Trade Marks (4th Ed.) 13. Although trade marks and trade names each possess differing 'characteristics which distinguish them, one from the other, (See American Steel Foundries v. Thomas E. Roberts, Commissioner, decided by the United States Supreme Court at the October Term, 1925; opinion filed January 4, 1926) they are nevertheless sufficiently similar in their general nature as well as in their acquisition, function and use to be regarded as the same species or kind of property within the doctrine of *ejusdum generis*

when applying the same; for the purposes of construction, to the language of Section 70a of the Bankruptcy Act of 1898. Indeed, in developing the law of trade marks and trade names, courts and text writers have encountered noticeable difficulty in definitely distinguishing between the two· Demonstrating their similarity has required but little effort. When the Bankruptcy Act of 1898 was passed, the courts had not pointed out so clearly as at the present time the distinctions, *inter se,* between trade marks and trade names, a circumstance which may be pertinent in connection with the omission of Congress to specifically enumerate both in subdivision (2) of Section 70a. But however that may have been, the trade name here under consideration being an assignable one, we regard the provisions of subdivision (5) of Section 70a as entirely sufficient to pass such name to the trustee for the benefit of the creditors, which conclusion is unaffected by a proper observance of the doctrine of *ejusdem generis* in construing the section. See Sarrazin v. Irby Cigar Co. (C. C. A.) 93 Fed. 624; 46 L. R. A. 541; Kidd v. Johnson, 100 U. S. 617; 25 L. Ed. 769; In re Swazey, 62 How. Pr. (N. Y·) 215; Richmond Nervine Co. v. Richmond, 159 U. S. 293; 40 L. Ed. 155; Lothrop Pub. Co. v. Lothrop, 191 Mass. 353; 77 N. E. 841; 5 L. R. A. (N. S.) 1077; Wilmer v· Thomas, 74 Md. 485; 22 Atl. Rep. 403; 13 L. R. A. 380; Sawilowsky v. Brown, 288 Fed. 533; English v. Richardson, 117 Atl. Rep. 287; 26 R. C. L. 866; Hopkins on Trade Marks, (4th Ed.) 30; 38 Cyc. 875.

A trade name exists as an incident of the business in which it was lawfully acquired and with which it remains identified. As a mere abstract right, having no reference to any particular property, commodity or business, it can not exist. Separated from the business to which it belongs and with which it is identified, it is not a species of property and can not be sold or transferred as such. American

Steel Foundries v. Thomas E. Roberts, Commissioner, decided by the Supreme Court of the United States at the October Term, 1925; opinion filed January 4, 1926. The physical elements or assets of a business may not be sold to one and the good will and trade name thereof to another, for when the good will and trade name is separated from the business to which it applies it is thereby destroyed and can not thereafter be the proper subject of a sale. As it is sometimes expressed, "the shadow cannot be separated from the substance." In re: Jaysee Corset Co. 201 Fed. 779; Rodseth v. Northwestern, etc. Wks., 129 Minn. 472; 152 N. W. Rep. 885; Ann. Cas. 1917A, 257; Weener v. Brayton, 152 Mass. 101; 25 N. E. Rep. 46; 8 L. R. A. 640; Witthaus v. Braun & Mattfeldt, 44 Md. 303; 22 Am. St. Rep. 44; The Fair v. Jose Morales Co., 82 Ill. App. 499; Seabrook v. Grimes, 107 Md. 410; 68 Atl. Rep. 833; Skinner v. Oakes, 10 Mo. App. 45; Jacoway v. Young, 228 Fed. 630; 143 C. C. A. 87; Falk v. American, etc. Co., 180 N. Y. 445; 73 N. E. Rep. 239; 1 L. R. A. (N. S.) 704; 105 Am. St. Rep. 778; 2 Ann. Cas. 216; 38 Cyc. 867; Smith v. Yost, 125 N. E. Rep. 72.

Because of these peculiar qualities which inhere in trade marks and trade names as property, it has been held by the courts, with great uniformity, and perhaps may now be said to be the general rule, that, in a voluntary sale of a business as an entirety, trade marks and trade names which have been lawfully established and identified with such business will pass to one who purchases as a whole the physical assets or elements of the business, even though not specifically mentioned in the conveyance. Wilmer v. Thomas, 74 Md. 485; 13 L. R. A. 38; Solis Cigar Co. v. Pozo, 16 Colo. 388; 25 Am. St. Rep. 279; Laughman's Appeals, 128 Pa. 1; 18 Atl. Rep. 415; 5 L. R. A. 599; Morgan v. Rogers, 19 Fed. 596; Kronthal Waters v. Beckham, 137

Fed. 649; Hering-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554; 52 L. Ed. 616; Snyder Mfg. Co. v. Snyder, 54 Ohio St. Rep. 86; Williams v. Farrand, 88 Mich. 473; Merry v. Hoopes, 111 N. Y. 415; Feder v. Benkert, 18 U. S. Cir. Ct. App. 549; Allegretti v. Chocolate Cream Co., 177 Ill. 129; 52 N. E. Rep. 487; Corbett Bros. Co. v. Reinhardt-Meding Co., 77 N. J. Eq. 7; Macwilliam v. President Suspender Co. (C. A. D. C.) 242 Off. Gaz. 255. Where the trade name involved is not in law a personal one, the courts have so far made no material distinction in this respect between a voluntary sale and one by operation of law through bankruptcy or a general assignment for the benefit of creditors, holding in such instances that although not specifically mentioned in the proceedings, the trade marks or trade names lawfully identified with the business of the insolvent pass to his trustee and thence to one who purchases the business substantially as a whole. S. F. Myers Co. v. Tuttle, 183 Fed. 235; 188 Fed. 532; Sarrazin v. Irby Cigar Co., *supra;* Morgan v. Rogers, 19 Fed. 596; Pepper v. Labrot, 8 Fed. 29; Kidd v. Johnson, *supra;* Menendez v. Holt, 128 U. S. 514; 32 Law. Ed. 526; Snyder Mfg. Co. v. Snyder, 54 Ohio St. Rep. 86; Sawilowsky v. Brown, 288 Fed. 533. See also cases cited in note to Falk v. American West Indies Co., 1 L. R. A. (N. S.) 704. Where, however, the name involved is one which is in law a personal name, and the transfer thereof is by operation of law or through judicial proceedings, a limitation exists upon the future use thereof by the purchaser to the exclusion of the person whose individual name it is. In re: Harry I. Wood Elec. Co., 285 Fed. 29; Mattingly v. Stone, 12 S. W. Rep. 467; Hembold v. Hembold, 53 How. Pr. (N. Y.) 453; Sawilowsky v. Brown, 288 Fed. 533. But the trade name now under consideration is not a personal one and we are not here concerned with such limitation.

In this case, the physical assets, including the fixtures, were purchased as an entirety by the appellee Sutker, the sale being made, as advertised, at the bankrupt's former business location. In addition to the entire physical assets, the trustee expressly sold, and by the bill of sale in terms conveyed to the purchaser the good will and trade name identified with the bankrupt's former business, which sale was confirmed by the Referee in Bankruptcy, in an order expressly reciting the sale of the good will and trade name, and such sale was subsequently approved by the United States District Court, Southern District of Florida, in which the matter was pending. The trustee's advertisement of sale gave notice that he would sell "the entire stock of ladies', misses' and children's shoes, hosiery, findings and store fixtures of Samuel Sawilowsky, trading as Children's Bootery, bankrupt, 115 Main Street, Jacksonville." Even if it be that the bankrupt's trade name would not pass by such a sale by operation of law and without specific mention either in the advertisement or bill of sale, we regard the action of the trustee in specifically selling and conveying the good will and trade name of the bankrupt in connection with the physical assets, under the circumstances stated, as within the intendment of the advertisement. It therefore follows that appellant Sawilowsky, as an individual, by his adjudication in bankruptcy, was divested of all interest in or right to the use of the trade name in question, and that the appellee Sutker acquired the former right of Sawilowsky to the exclusive use of the trade name in connection with the business with which it was identified. Appellants Jacobs and Joel, so far as we are able to ascertain from the record, have never acquired, as individuals, any rights of any nature in connection with the use of the trade name under consideration. The corporate appellant, The Children's Bootery, does not claim the

72

right to use the trade name, ''The Children's Bootery'' as an assignee of or otherwise under Sawilowsky, its originator, but claim by right of independent acquisition, namely, the right to its use as its own corporate name.

The selection of a corporate name is largely controlled by those who seek that form of business organization. It is chosen with a view to the business in which the corporation is presently to engage. In assuming its name, a corporation acts at its peril. Its organizers are charged with the duty of selecting a name which will not result in material deception. Juvenile Shoe Co. v. Federal Trade Commission, 289, Fed. 57; Metropolitan Tel. Co. v. Metropolitan Tel Co., 141 N. Y. Supp. 598. It is settled that such deception may be practiced by the fraudulent use of a corporate name (Keystone Oil Co. v. Buzby, 219 Fed. 473, 476), and the good faith of its incorporators is immaterial if that name too closely resembles that of any other previously established corporation, partnership or individual engaged in the same line of business and material confuion or injury results therefrom. W. E. Garrett & Sons v. T. H. Garrett & Co., 78 Fed. 472; Elbs v. Rochester Egg Carrier Co., 134 N. Y. Supp. 979; Martell v. St. Francis Hotel Co., 93 Pac. Rep. 1116; Rosenburg v. Freemont Undertaking Co., 114 Pac. Rep. 886. A corporate name, although derived through authority of the state, can not be used in a manner which will result in fraud or deception. If so used, the fact that the charter was obtained from the state does not deprive a court of equity of its power to prevent fraud and protect property rights by enjoining that use. The grant of a corporate charter by the state can confer no power to perpetrate wrong. The act of sovereignty in allowing incorporation under a particular name is permissive only. It sanctions the act of incorporation under the name chosen and for the business proposed, if that name

and that business be otherwise lawful, but in granting a corporate charter the sovereign adjudges neither the legality of the business nor of the name chosen. That is a matter for judicial determination by a court of competent jurisdiction. An individual will be enjoined, in proper cases, from the fraudulent or deceptive use of his own natural name. With even greater justification will an artificial person, a corporation, be enjoined from such use of a corporate name voluntarily chosen by it. Peck Bros. & Co. v. Peck Bros. Co., 113 Fed. 291; 62 L. R. A. 81; General Film Company of Missouri v. General Film Company of Maine, 237 Fed. 64; Chas. S. Higgins v. Higgins Soap Co., 39 N. E. 490; 27 L. R. A. 42; 43 Am. St. Rep. 769; Bender, v. Bender, S. & O. F. Co., 178 Ill. App. 203; Celluloid Mfg. Co. v. Cellunite Mfg. Co., 32 Fed. 94. The organization by Sawilowsky and his associates of the corporate appellant with the name of ''The Children's Bootery,'' and the opening of its retail shoe store on the same side of the street and two doors removed from the old location where the original trade name, ''The Children's Bootery,'' had been long used by Sawilowsky, as an individual, in exactly the same kind of business, whether so intended or not, clearly circumvents the effect of the Bankruptcy Law of 1898 upon Sawilowsky's former ownership of the trade name ''The Children's Bootery,'' and constitutes an unwarranted invasion of appellee's right to the use of the original trade name ''The Children's Bootery'' acquired by him in the manner stated. Upon the principles herein announced the use by the corporate appellant of its name in the business proposed to be conducted at the location chosen by it, should be enjoined.

It is further contended by appellants that the restraining order against them, granted at the instance of Sutker, is too broad in its terms, in that it restrains appellants from *any* use of the name, The Children's Bootery, within

74

the jurisdiction of the Court below. The language of the decree is general, but it should be interpreted with reference to the pleadings and proceedings in the case Pearson v. Helvenson, 50 Fla. 590; 39 South. Rep. 695. We therefore construe the restraining order against appellants as enjoining and restraining their use of the words "The Children's Bootery" as a trade name in marks, brands, signs, labels or advertising matter, in the retail shoe business at No. 103 Main Street, in the City of Jacksonville, Florida, since that is the only use of such name referred to in the pleadings.

That the phrase "The Children's Bootery" is a valid trade name and entitled to protection as such is conceded by the pleadings, and that question is therefore not before us. Indeed, none of the parties hereto are in a position to raise the point.

The two orders appealed from are affirmed.

BROWN, C. J., AND WHITFIELD, ELLIS, TERRELL AND BUFORD, J. J., concur.