Miami Bottled Gas, Inc., and Joseph A. Garfield v. Dri-Gas Corporation, Edward J. Van Delinder, John Lewis Leib, and Van Plumbing Company.

183 So. 828.
Division B.
Opinion Filed October 14, 1938.

*Simonhoff & Simonhoff* and *Anna Brenner Mankes,* for Appellants;

*Walsh, Beckham & Ellis,* for Appellees.

Chapman, J.—On June 10, 1936, plaintiffs below filed their amended bill of complaint in the Circuit Court of Dade County, Florida, praying for a restraining order against the defendants: (a) from the use on the part of the defendants of the name "Dri-Gas Corporation" or "Dri-Gas"; (b) from selling bottled gas; (c) from servicing bot-

tled gas; (d) for a permanent injunction against unfair methods of competition, and for an accounting. The lower court made and entered an order denying a motion to dismiss the amended bill of complaint. A separate answer was filed on the part of John Lewis Leib, and a joint answer was filed on the part of the defendants, Dri-Gas Corporation, Edward J. Van DeLinder and Van Plumbing Company. The record discloses that interrogatories were propounded by the plaintiffs to the defendants and answers thereto appear in the record. The lower court heard the evidence offered by the respective parties upon the issues made by the pleadings, and on the 12th day of February, 1937, on final hearing, entered an order dismissing the cause without prejudice, at the cost of the plaintiffs. From the order of dismissal on final hearing an appeal has been perfected to this Court and a number of assignments argued seeking a reversal of the order appealed from.

The record shows that Joseph A. Garfield, on November 5, 1934, by purchase became the owner and operator of a plant in the City of Miami known as Miami Bottled Gas, Inc. The sellers, inclusive of J. L. Leib, agreed not to engage in the same or a similar business, as shown by paragraph 8 of the Agreement, viz.:

"8. The sellers and each of them hereby agree not to engage in, directly or indirectly, as owner, employee, officer or director, in the same or similar business to that in which the said Miami Bottled Gas., Inc., is engaged, so long as they or either of them is employed by said Miami Bottled Gas, Inc. In the event of the termination of said employment, the sellers may engage in said business as employees, in the same or similar business, but, in no event shall the sellers or any of them service gas, as employer or employee to any person or persons, co-partnership or corporation, who was a customer of and was being serviced with

gas by said Miami Bottled Gas, Inc., on November 3rd, 1934."

It is alleged in the amended bill of complaint that the products sold by it is known to their customers and to their trade, and all others generally, under the name of "Dri-Gas," being a special combination of gases not used or sold by any other comany engaged in a similar business in Dade County, Florida. That plaintiff adopted the name of Dri-Gas to designate its combination of gases and expended large sums of money to advertise the same in the Miami area and that defendants here should be enjoined from selling its gas under the charter name of its said corporation, viz., "Dri-Gas Corporation."

The defendant "Dri-Gas Corporation" contends that the name "Dri-Gas," as owned and advertised by the plaintiff, does not mean a special combination of gases as alleged, but is a common product sold by the Standard Oil Company and other gas distributors and has been in use in the Miami area for a period of more than ten years past. Likewise, it is contended that the plaintiff has not made and cannot make an exclusive appropriation of the term "Dri-Gas"; that the term "Dri-Gas" has not acquired a secondary meaning as applies to the business of Miami Bottled Gas, Inc.; that the word "Dri-Gas" is a common, every day word like gasoline or kerosene and is not subject to exclusive appropriation. The trade mark issued to the plaintiff during the month of August, 1935, is, viz.: "Cook and heat with Dri-Gas, nature's cooking fuel, Economy, Cleanliness." The United States coyright office failed to grant to the plaintiffs the exclusive right to the use of the word "Dri-Gas."

It is shown that the defendant, J. L. Leib, violated the terms of the agreement, *supra,* and accepted employment with the defendant here, but several months ago severed his connection with the defendant, left the City of Miami

and took up his residence in the City of Fort Pierce. He was not at the time of the hearing violating the terms of his agreement and it was useless to issue a restraining order against him, but the order of dismissal so entered was without prejudice and all of the rights of the plaintiff under the purchase agreement are protected and can be fully presented at a later date at the option of the plaintiffs. This ruling on the part of the lower court is without error.

This Court considered the law of trade marks in the case of El Modello Cigar Mfg. Co. v. Gato, 25 Fla. 886, 7 So. 23, 6 L. R. A. 823, 23 Am. St. Rep. 537, when it was said:

"It is now well established that a man may acquire the right of a trade mark in his own name or in the name of any person, but a man cannot acquire the right of a trade mark in the use of his own name to the exclusion of the right of another person by the same name, and whose place of business is in the same place; yet it is well settled in the law of trade marks that when one person uses his own name to identify and distinguish the origin and ownership of his goods which are manufactured at a particular place, no other person by the same name will be permitted to use his name on his own goods, if under such circumstances as are calculated and designed to injure the trade and business of another. In other words, one man will not be allowed, though his name be the same as that of another person or manufacturer, to represent his goods as, and for the goods of another. * * *"

"A man may establish his right to a trade mark in the name of a place, city or town, and it is well established that when a man manufactures his goods at a particular place and uses the name of that place in combination with other words as a trade mark to distinguish the origin or ownership of his goods, no other person will be permitted to use

the name of the same place, upon goods manufactured by him at another and different place. * * *"

In the case of Children's Bootery y. Sutkerm, 91 Fla. 60, 107 So. 345, 44 A. L. R. 698, this Court upheld a restraining order from the use of "The Children's Bootery" as a trade name in marks, brands, signs, labels, or advertising matter by a competitor in the same trade area where the name had been used exclusively.

Hopkins on Trademarks, Tradenames and Unfair Competition (4th Ed.), page 18, par. 10, says:

"10. Nature of the Right to a Trademark.—The right to a trademark is a right of property, which the state may, in the exercise of its police power, protect by appropriate penal legislation. This right of property is, in the United States, treated as a common-law right, and in no wise dependent upon statutory law for its inception.

" 'Property in trademarks is recognized at common law, and may be and has been made the subject of legislation in the states. It does not owe its existence as a right to any Act of Congress. Legislation, therefore, by Congress, is the mere regulation of a pre-existing right, and is based upon the interstate character of the Act.' "

Also page 27a, par. 16, same edition:

"16. How Trademark Rights May Be Acquired.—A mere casual use, interrupted, or for a brief period, will not suffice to establish a trademark right in the mark; there must be such a user, as to its length and publicity, as will show an intention to adopt the mark as a trademark for a specific article, although 'the right to use does not depend upon any particular period of usage.'

"The question of length of use is now greatly complicated by the place of use, where the infringer is operating in a locality to which the plaintiff's goods bearing the trademark

have effected commercial penetration. But it seems clear that if the trademark has been established by the plaintiff in his own locality even very limited sales in the defendant's locality will suffice to warrant injunctive relief.

"It must be borne in mind that marks, containers, get-up, labels and the like, other than technical trademark rely entirely upon being known, through use, to a substantial portion of the purchasing public, as indicating the plaintiff's product; under the 'secondary meaning' rule considered in detail throughout this book."

Also page 20, par. 11, same edition:

"11. The Test of Exclusiveness.—The trademark right must be exclusive; by this test it stands or falls. As Judge Cochran has said, 'what makes a mark affixed by a seller to goods produced or selected by him a technical trademark (*i. e.,* one whose exclusive use by him in marking goods of the same or like character will be protected) is that when it is affixed to goods of that character it amounts to a representation that they are the goods of the person who has adopted it as his trademark. If it does not amount to such a representation, it is not a technical trademark.' "

We have examined carefully the many authorities cited by counsel for the respective parties, and, broadly speaking, they have common legal grounds upon which to stand. Our study of the record compels us to conclude that a decision in the case must turn on the sufficiency of the evidence to sustain the material allegations of the amended bill of complaint. There is no evidence here to support the allegation that the products sold by the plaintiffs under the name of "Dri-Gas" were a special combination of gases not used by any other company engaged in a similar line of business in Dade County, Florida, but on the other hand, the record shows that the products sold by the plaintiffs under the name of "Dri-Gas" were sold by the Standard Oil Com-

pany and other gas wholesale distributors in the Miami area. The name "Dri-Gas" had been used in trade areas of Miami for a number of years and the plaintiffs, nor the parties from whom they purchased, never obtained the exclusive use of the name "Dri-Gas," and the Chancellor's findings are abundantly supported by the record.

The findings of the Chancellor will not on appeal be disturbed unless clearly erroneous. See Atlantic Bank, etc., v. Sengstak, 95 Fla. 606, 116 So. 267; Mock v. Thompson, 58 Fla. 477, 50 So. 673; Lucas v. Wade, 43 Fla. 419, 31 So. 231; Kent v. Knowles, 101 Fla. 1375, 133 So. 315, 317. The decree appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.