**MIAMI CREDIT BUREAU, INC.,**
Appellant,

v.

**CREDIT BUREAU, INC.,** Appellee.

No. 17898.

United States Court of Appeals
Fifth Circuit.

March 30, 1960.

Thomas H. Anderson, Miami, Fla., Anderson & Nadeau, Miami, Fla., for appellant.

Earl D. Waldin, Jr., Miami, Fla., Smathers, Thompson & Dyer, Miami, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

The question presented for decision is whether the District Court properly enjoined the appellant from using the name "Miami Credit Bureau, Inc." for the reasons that such use created public confusion and constituted an unfair trade violation of appellee's trade names, "Miami Credit Bureau" and "Credit Bureau of Greater Miami." We hold that the injunction was properly within the power of the district court.

The facts necessary to an understanding of the case may be briefly stated as follows: The appellee, the Credit Bureau, Inc., which conducted a credit information service in Miami, Florida (Dade County), and twenty one other cities in the southeastern states, instituted suit against the appellant corporation and its president, O. H. Overholser, to enjoin them from using the appellee's trade names. In 1942 the appellee, a Georgia corporation, purchased the assets of a Florida corporation, "Credit Bureau of Miami, Inc.," including the name "Credit Bureau of Miami." The appellee allowed the Florida corporation to be dissolved by operation of law in 1945 for nonpayment of franchise taxes.

However, the appellee began operations of the purchased corporation on November 1, 1942, and operated its credit information business under the trade name "Credit Bureau of Miami" until April 1956. On the latter date the appellee began to use the similar trade name "Credit Bureau of Greater Miami," and on April 18, 1956, registered this trade name under the Florida Fictitious Names Statute (F.S. § 865.09, F.S.A.) The appellee was known by, and referred to by, these trade names by its customers and the general public during these periods. The appellant, Overholser, had operated the same type business as the appellee in Dade County from 1934 to 1945 under the name "Credit Service, Inc." In 1945 this corporation was dissolved for nonpayment of franchise taxes, but Overholser continued in the same business under the same name until June 1957, when he formed the Florida corporation, "The Credit Bureau of South Florida." This corporation retained the trade name of "Credit Service" which was registered on August 20, 1957, under the Florida Fictitious Name Statute. In September 1957, Overholser formed a second Florida corporation under the name "Miami Credit Bureau, Inc." The appellant corporation contracted for a listing in the Miami Telephone Directory under the name "Miami Credit Bureau, Inc." for the year commencing December 31, 1957. The district court found that Overholser knew that the appellee was operating in Dade County under the name of "Credit Bureau of Miami" and since April 1957, under the name "Credit Bureau of Greater Miami," and that Overholser deliberately used the name "Credit Bureau of Miami, Inc." for the purpose of misleading and confusing the public thereby obtaining business advantages which rightfully belonged to the appellee. The evidence discloses that there were delays in the appellee's mail and telephone calls and an increase in its operating expenses resulting from this confusion, and the trial court ruled that the then existing jurisdictional amount of $3000.00 was present.

The major contentions made by the appellant are: (1) A corporation may not lawfully acquire a vested right in its fictitious name; (2) the names here involved are not such as enjoy the protection of the law; (3) the appellee abandoned the trade name "Miami Credit Bureau, Inc." when it allowed the Florida corporation to be dissolved and when it began using the name "Credit Bureau of Greater Miami"; (4) there was no proof of confusion such as would support the trial court's findings on this issue; and (5) there was no proof of damages in the amount of $3000.00.

■ The law is clearly against the appellant on the first point. Like a natural person, a corporation can acquire a fictitious or trade name particularly where it has a secondary meaning, as here. This principle of law is supported by the cases from numerous jurisdictions and by the texts. See, for example, Meredith v. Universal Plumbing & Construction Co., 1938, 272 Ky. 283, 114 S.W.2d 94, 96, and 6 Fletcher on Corporations, § 2442 (1950 RV). No Florida statute or case has been cited to the contrary, and the extent to which Florida law prohibits the use by one corporation of the same name as that already being used by another corporation is indicated by the following language from this Court's decision in Scalise v. National Utility Service, 5 Cir., 1941, 120 F.2d 938, 940:

"It is the law too, not only in Florida but generally elsewhere that it is a wrongful act to organize a domestic corporation by the same name as that already known to be used in the state by a foreign corporation, although the foreign corporation is not domesticated, but is doing business, in the state without a permit, and an injunction will issue, not merely after the charter has been obtained to prevent the use of the name in unfair competition, but to restrain the procuring or issuing of the charter under the proposed name or if the charter has been issued, to restrain the use of the name. 13 Am. Jur., Sec. 135, p.

273; * * * Children's Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 44 A.L.R. 698."

 Second, the appellant contends that the words "Credit Bureau" and "Miami" are descriptive and geographical and, therefore, are incapable of being appropriated as a trade name. This is a well known limitation of the establishment of trademarks, but is not applicable to trade names. Children's Bottery v. Sutker, 1926, 91 Fla. 60, 107 So. 345, 44 A.L.R. 698. See also Restatement, Torts, §§ 715, 716.

The argument that the appellee abandoned its trade names by expiration of its charter misses the whole point of the evidence that the public and particularly those desiring credit reports and making requests for information all considered the appellee as the "Miami Credit Bureau" and were confused by the appellant's use of the same name. Moreover, the appellee did not abandon the name "Credit Bureau of Miami, Inc." but merely permitted the dissolution of the Florida corporation whose assets and name it had acquired. The "Miami Credit Bureau" and "Credit Bureau of Greater Miami," if not the grammatical equivalent of each other, are so obviously synonymous as to be self-refutation of the contention that the appellee abandoned the former trade name when it began to use the latter in April of 1957.

It was also urged that the appellee did not prove the requisite jurisdictional amount of $3,000.00 existing prior to July 25, 1958. Some courts have recognized that an actual monetary loss or potential loss of the jurisdictional amount is not a requirement of jurisdiction in a suit for injunction for infringement of a trade name, but that the amount in controversy is the value of the good will. See Safeway Stores v. Suburban Foods, D.C.E.D.Va.1955, 130 F. Supp. 249, 253. However, we need not rely on such a proposition in view of the trial court's finding of fact that the jurisdictional amount was directly involved. There was evidence to the effect that there was a delay in appellee's telephone calls, increased use of personnel time, greater operating costs and a loss of business resulting from the confusion in names. We think that in view of this evidence the trial court's determination was not "clearly erroneous."

Likewise, the evidence is sufficient to support the finding that there was confusion caused by the appellant in refutation of the appellant's final contention that the trial court's findings on this matter were "clearly erroneous." Indeed in a colloquy between the trial judge and Overholser the latter virtually admitted that he picked out the appellee's trade name and used it in the telephone directory in the hope that those looking for a credit bureau would find the name and come to him. In other words he was banking on creating confusion.

The judgment is affirmed.