GAULT et al., ETC. *v.* WAGNER et al., ETC.

[No. 159, September Term, 1961.]

*Decided February 16, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John A. Cochran* and *A. Frederick Taylor,* with whom were *Martin & Taylor,* and *Paul Martin* on the brief, for appellants.

*Richard H. Lerch,* with whom were *Lerch & Huesman* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree dismissing a bill for injunction

which sought to enjoin the use by the respondents of the trade names "Gault", "William A. Gault & Son", and "The Original House of Gault", and granting an injunction, prayed in a cross bill, against use by the appellants of the corporate name "William A. Gault & Bro., Inc."

Matthew Gault, the great-grandfather of the appellants, established a stone and monument business in 1832. His son, William A. Gault, incorporated the business in 1913, under the name "William A. Gault & Son, Inc.", but in 1916 his son, H. Matthew Gault, father of the appellants, left the employ of the corporation and established a competing business under his own name. Since his death in 1941 his sons, the complainants, partners trading as "Gault Monument Co.", have continued the business.

William A. Gault died shortly after Matthew withdrew in 1916, and the controlling interest in the corporation was sold to Gustavus Sehlstedt. Albert Sehlstedt continued the business until his death in 1954. In 1958 his widow discussed with R. Dorothy Wagner, who had been employed by the corporation for many years and in full charge of the business since 1953, her plan to discontinue the monument business, and utilize the corporate form simply to hold title to certain business properties. Miss Wagner persuaded her, in consideration of an earlier termination of Miss Wagner's salary contract, to sell her "the name and good will" of the monument business. By articles of amendment filed with the State Tax Commission on July 25, 1958, the name of the corporation was changed from "William A. Gault & Son, Inc." to "The Sehlstedt Company". On July 28, 1958, the corporation executed a bill of sale to Miss Wagner, conveying "the monument and tombstone business owned and operated by the said vendor, located at 712 York Road * * * together with the good will of the said business, the exclusive right to the use of the trade name, 'William A. Gault & Son', together with all records, work-orders and other documents and/or other memoranda pertaining to said business".

The corporation, William A. Gault & Son, Inc., had conducted its business at 505 Park Avenue, in a building owned by it, but on the same date on which the bill of sale to Miss

Wagner was executed, the Sehlstedt Company sold its finished monuments to Wagner and Frank Hammaker, who was engaged in the business at 712 York Road, at a price of $2,000. Wagner and Hammaker entered into an agreement that Wagner should work for Hammaker at a salary of $75 per week and that she would permit Hammaker to use the name "William A. Gault & Son", and receive a commission of 5 per cent on all business coming in under the "Gault" name. Hammaker has since advertised rather extensively under the name "William A. Gault & Son", and is listed in the telephone directory under that name.

In August, 1958, upon learning that the corporation "William A. Gault & Son, Inc." had changed its name, the appellants formed a corporation under the name "William A. Gault & Bro., Inc." in order to preempt that name. But they did not transfer the assets from the partnership to the corporation, nor did they trade under or advertise in the corporate name. In short, they made no use of it. If we assume that they would have had a right to use a corporate title composed of their proper family names, it does not follow that they would be entitled to encroach upon the good will acquired by the original house of Gault through the use of the similar trade name. See *American Stewart Distillery v. Stewart Distilling Co.,* 168 Md. 212, 219. Cf. *Miami Credit Bureau, Inc. v. Credit Bureau, Inc.,* 276 F. 2d 565 (C. A. 5th). They have, however, stressed the name "Gault" in their advertising. It was shown in the testimony that there have been instances where prospective purchasers were confused as to which manufacturer they were dealing with.

The chief question presented is as to the right of the respondents to use the name "William A. Gault & Son" as a trade name. It is not disputed that the Sehlstedts acquired the right to use the corporate name "William A. Gault & Son, Inc." when they purchased a controlling interest in that firm in 1917. It is not so clear that they acquired a right to use the name "William A. Gault & Son" as a trade name. However, Miss Wagner testified that over a twenty-five year period the telephone at 505 Park Avenue was answered: "William A. Gault & Son", and that the "Inc." was never used. The chancellor found as a fact that the trade name was established.

It is a question of fact in each case. See *Edmondson Vil. Theatre v. Einbinder*, 208 Md. 38, 45; 3 *Restatement, Torts*, sec. 716, Comment b; 1 Nims, *Unfair Competition and Trade-Marks* (4th ed.), sec. 37. A corporate name may also become a trade name. *Miami Credit Bureau, Inc. v. Credit Bureau, Inc., supra;* 1 Nims, *op. cit., supra*, sec. 83. Minor changes in a corporate name, or even its discontinuance, upon dissolution or sale, do not necessarily terminate or invalidate the right to continue the trade name based thereon. See 1 Nims, *op. cit. supra*, sec. 85, and the cases collected in 3 A.L.R. 2d 1226, 1287.

Assuming that the Sehlstedt family through their control of the corporation, acquired a right to the use of the trade name, in connection with the business conducted thereunder for many years, we see no reason why they could not transfer that right to Miss Wagner, as the successor corporation purported to do, for a valuable consideration. The assignability of a trade name is generally recognized, where the right to use is not merely personal. See 52 Am. Jur., *Trademarks, Tradenames, Etc.*, § 38; *Bagby & Rivers Co. v. Rivers*, 87 Md. 400, 422. The appellants contend that the name was abandoned, when the corporate name was changed. But the short answer is that there was no intention to abandon, as the chancellor found. On the contrary, there was an effort to assign the name, along with the good will and business, to Miss Wagner. Cf. *Sherwood Co. v. Distilling Co.*, 177 Md. 455, 461, and cases in the note, 3 A.L.R. 2d 1226, 1233.

A more serious question concerns the right of Miss Wagner to use the name in connection with products manufactured by another. Some cases take the view that bare licensing, or the sale of a trade-mark apart from the article to which it is affixed, may constitute an abandonment, because of the chance that the public may be deceived as to the origin of the goods. Cf. *Witthaus v. Braun*, 44 Md. 303, and *Seabrook v. Grimes*, 107 Md. 410. See also *Broeg v. Duchaine*, 67 N. E. 2d 466 (Mass.). But as stated in *Corkran, Hill & Co. v. A. H. Kuhlemann*, 136 Md. 525, 533, in the case of a licensor, "It may be enough that they [the articles] are manufactured for him, that he controls their production, or even that they pass

through his hands in the course of trade, and that he gives to them the benefit of his reputation, or of. his name and business style." The chancellor found that Miss Wagner was engaged in business with Mr. Hammaker. In *Cardinal v. Taylor,* 19 N. E. 2d 58, 59 (Mass.), Justice Qua said, for the court, "A trade name, like a trade mark, may be assigned, as long as it remains associated with the same product or business with which it has become associated in the public mind. * * * And upon the same condition it may be licensed or lent * * * by its owner according to the terms of the lending * * *." See also *E. I. Du Pont De Nemours & Co. v. Celanese Corp.,* 167 F. 2d 484 (Ct. Cus. & Pat. App.).

In the instant case, while the arrangement is somewhat informal, the licensor is closely associated with the licensee's firm. She is in a position to judge the quality of the work, and to exert a measure of control, through the right to terminate the license at will. Indeed, she is probably doing the same type of work for Hammaker as she did. for the corporation, William A. Gault & Son, Inc., over a long period of years, where she appears to have been in charge of the booking of orders. During those years the monuments ordered in the name of Gault were actually manufactured by Mr. Sehlstedt and other employees. We find no such deception in the use of the trade name as would bar its use under the circumstances. That confusion exists is due to the fact that the name "Gault" is used by two different manufacturers. But the name "William A. Gault & Son" was in existence prior to the time the appellants went into a competing business. They are the ones who created the confusion. The chancellor did not enjoin the use of their trade name "Gault Monument Co." Family and similar names often give rise to confusion, but that seems unavoidable, although it may be minimized through disclaimer. See *Avalon Hill Co. v. Gebhardt,* 224 Md. 52, and cases cited.

*Decree affirmed, with costs.*