CANADY, J.,
dissenting.
I agree with Chief Justice Polston and Justice Labarga that the proposed amendment should be denied placement on the ballot because the ballot summary is clearly and conclusively misleading. One of the most important rights enjoyed by the people of Florida under our constitution is the right to vote on constitutional amendments proposed through the initiative pro *820 cess. That right and the initiative process are subverted when the voters are presented a misleading ballot summary. The integrity of the electoral process is seriously compromised by placing this proposed amendment on the ballot with a radically defective summary — a summary that will affirmatively mislead the voters in several different ways concerning the chief purpose of the amendment. I dissent.
I.
Most egregiously, the ballot summary seriously misrepresents the interaction of the proposed amendment with federal law. The problem here is not with what the summary omits but with what it contains. The summary states that the proposed amendment “[d]oes not authorize violations of federal law,” but the truth is that violations of federal law unquestionably are authorized by the amendment. A more misleading characterization of the relationship between the amendment and federal law is hard to conceive.
The majority’s attempt to address this issue blithely sidesteps the basic deception in this portion of the summary. First, the majority states that “the statements in the ballot summary are substantially similar in meaning to the proposed amendment’s text.” Majority op. at 808. A comparison of the text of the summary with the text of the amendment gives the lie to this assertion. Second, the majority states that we have “never required that a ballot summary inform voters as to the current state of federal law and the impact of a proposed state constitutional amendment on federal statutory law as it exists at this moment in time.” Id. at 808. That assertion may be true, but it is totally beside the point. The issue here is not that the summary fails to explain the amendment’s relationship with federal law but that it affirmatively misrepresents that relationship.
This is what the text of the amendment says about federal law: “Nothing in this law section [sic] requires the violation of federal law or purports to give immunity under federal law.” (Emphasis added.) And this is what the summary says about federal law: “Applies only to Florida law. Does not authorize violations of federal law_” (Emphasis added.) Contrary to the majority’s assertion, it is obvious that the text of the summary is strikingly dissimilar to the text of the amendment.
The text of the amendment says that nothing in the amendment “requires the violation of federal law,” but the text of the summary says that the amendment “[d]oes not authorize violations of federal law.” There is a vast difference between not requiring a violation of federal law — whatever that may mean — and not authorizing a violation of federal law. To find substantial similarity here is to find something that does not exist. The text of the amendment also says that the amendment does not “purport[ ] to give immunity under federal law,” but the summary says nothing about “immunity.” Once again, there is a salient lack of similarity between the amendment and the summary.
The problem with this aspect of the summary, however, goes beyond these dissimilarities. The fundamental problem is that the summary is blatantly deceptive because it informs the voters that the amendment “[d]oes not authorize violations of federal law,” although it is beyond dispute — as Chief Justice Polston’s dissent explains — that conduct authorized by the amendment is criminal conduct under federal law. The voters therefore are potentially hoodwinked into believing that the amendment is consistent with the requirements of federal law. The summary’s proclamation of the amendment’s supposed *821 consistency with federal law is not about some inconsequential, ancillary detail that would be unlikely to influence a reasonable voter’s evaluation of the proposed amendment. On the contrary, it is a circumstance to which many voters may attach considerable significance. By misleading the voters on this significant point, the summary corrupts the electoral process.
The sponsors of the proposed amendment argue that the language of the summary is accurate because it “explicitly places the voter[s] on notice that they should be aware that the proposed initiative does not authorize violation of federal marijuana laws.” Initial Brief of Sponsor at 41, Advisory Op. to the Att’y Gen. re Use of Marijuana for Certain Med. Conditions, SC13-2006 (Fla. Nov. 8, 2013). They also argue that the summary places “voters on notice that any change provided by this amendment affects only Florida law, and that federal laws are unaffected by this change.” Id. at 44. The first argument is nonsensical. The second argument is correct, but it dodges the real issue.
By the first argument, the sponsors apparently mean to suggest that the summary informs voters that liability for violations of federal law will not be affected by the amendment. That is not inaccurate as a description of the portion of the summary that states: “Applies only to Florida law.” A reasonable reader would understand from this statement that the amendment would not alter or preempt federal law. If that were the only language in the summary bearing on the relationship between the proposed amendment and federal law, there would be no problem. The deception comes in the language that immediately follows, which informs the voters that the amendment “[d]oes not authorize violations of federal law.”
The sponsors suggest that this language is equivalent to the immediately preceding language in the summary. The suggestion that the two distinct statements communicate the same information crumbles under scrutiny. The question immediately arises why in the summary — where the seventy-five-word limitation places a premium on economy of expression — a statement would be included that simply restated in different words what had already been stated. A reasonable reader of the summary would hardly expect that the summary would repeat itself.
But, of course, the summary does not repeat itself. The statement that the amendment “[d]oes not authorize violations of federal law” carries a meaning that is entirely different from the preceding statement that the amendment “[a]p-plies only to Florida law.” The attempt to equate the two statements does violence to the plain meaning of the terms. A reasonable reader can only conclude that the second of the two statements occurring in the summary affirms that the conduct authorized by the amendment is not conduct that would violate federal law. That is what it says. If the statement in the summary had paralleled the statement in the text of the amendment that nothing in the amendment “purports to give immunity under federal law,” there would have been no deception, and the voters would have indeed been placed on notice that conduct authorized by the amendment might run afoul of federal law. The sponsors, however, chose not to include the statement tracking the text of the amendment. Instead, they chose — for some inexplicable reason — the deceptive statement.
II.
The remaining defects in the ballot summary largely revolve around the failure of *822 the summary accurately to reflect the amendment’s chief purpose, which is to authorize physicians to prescribe the medical use of marijuana when the “physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.” (Emphasis added.) This crucial language of the amendment— which appears in the definition of “Debilitating Medical Condition” in subsection (b)(1) — establishes a subjective standard for the medical use of marijuana, a standard granting physicians the authority to authorize the use of marijuana if the physician “believes” that the use by a particular patient would be medically beneficial given the medical condition from which the patient suffers. In particular, this language in the text of the amendment is relevant to the misleading statement in the summary that the amendment “[ajllows the medical use of marijuana for individuals with debilitating diseases as determined by a licensed Florida physician.” It is also relevant to the summary’s failure to disclose the broad nature of the immunity from civil liability granted to physicians by the text of the amendment, an immunity that is inextricably tied to the chief purpose of the amendment.
With respect to the immunity from liability granted by subsection (a)(2) of the amendment, analysis must begin with the acknowledgment that a standard predicated on what a particular physician “believes” — a word denoting a subjective- determination — is not equivalent to the prevailing medical standard of care. It is significant that the word “believes” in subsection (b)(1) is unqualified by the word “reasonably.” And nothing in the text or the context of the amendment suggests that “reasonably” should be read into the text. As a consequence, a physician who “believes that the medical use of marijuana would likely outweigh the potential health risks for a patient” and who issues a physician certification reflecting that subjective belief, has issued a physician certification “in a manner consistent with” the amendment. Under subsection (a)(2), the physician therefore “shall not be subject to ... civil liability or sanctions under Florida law for issuing” the physician certification.
The unmistakable import of the immunity provision is that such a physician cannot be held liable for negligence in connection with the issuance of the physician certification. The voters have a right to know that their right to pursue negligence claims in these circumstances is barred by the amendment’s immunity provision. But the summary omits any mention of this immunity.
Finally, I turn to the majority’s attempt to justify the misleading reference to “debilitating diseases” in the ballot summary. In that attempt, the majority incorrectly relies on the ejusdem generis — “like kind” — canon. Consideration of the structure and full context of the amendment’s central definition in light of the rationale for the canon leads to the conclusion that the canon is not properly applied here.
The canon “means that ‘where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated.’ ” Arnold v. Shumpert, 217 So.2d 116, 119 (Fla.1968) (quoting Children’s Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 347 (1926)). The canon “rests on [a] practical insight[ ] about everyday language usage” which recognizes that “[wjhen people list a number of particulars and add a general reference ... they mean to include by use of the general reference not everything else [within the scope of the general *823 reference] but only others of like kind [with the listed particulars].” 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47:18, at 382 (7th ed. 2007).
A necessary condition for the application of the canon is that the “members of the enumeration suggest a class.” Id. at 380. That is to say, there must be something that makes the enumerated particulars of “like kind” with one another. “Without some objective relationship” among the members of the enumeration, identifying a class for purposes of applying the canon will necessarily be “arbitrary and meaningless.” Id. at 382. Accordingly, to properly apply the canon, some naturally understood common quality or characteristic among all the specific members of the enumeration must exist. If that condition obtains, the specific common quality or characteristic ordinarily will naturally be understood to limit the sweep of the general reference following the enumeration to a subcategory of the general reference. Otherwise, there is no basis for restricting the sweep of the general reference.
Here, the enumerated particulars in the definition do not “suggest a class” that can reasonably be understood to limit the sweep of the general provision to some subcategory. These are the particulars enumerated in the definition: “cancer, glaucoma, positive status for human immunodeficiency virus (HIV), acquired immune deficiency syndrome (AIDS), hepatitis C, amyotrophic lateral sclerosis (ALS), Crohn’s disease, Parkinson’s disease, multiple sclerosis.” This list represents a diverse group of medical conditions, ranging from the inevitably and devastatingly debilitating and fatal to conditions that frequently can be successfully treated and controlled or cured. The list does not suggest a subcategory of the general category of “other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.”
This is a consequence not only of the diverse nature of the specifically enumerated medical conditions but also of the special nature of the general reference, which focuses on what a physician subjectively “believes” about the medical benefit for a particular patient given the particular medical condition from which the patient suffers. Based on this structural feature of the general reference, it is more natural to understand the listed medical conditions as illustrative of conditions that physicians will likely “believe” warrant the medical use of marijuana than to understand the listed conditions as establishing a limitation on the scope of the physician’s authority. The general thus controls the specific. The standard is whether the patient suffers from a medical condition — listed or unlisted — “for which [the] physician believes that the medical use of marijuana would likely outweigh the potential health risks for [the] patient.”
The majority unconvincingly asserts that an ancillary administrative provision of the amendment — subsection (b)(9) — relating to the content of physician certifications, should be allowed to alter the meaning of the definition that is the very heart of the proposed amendment. Contrary to the majority’s assertion, subsection (b)(9) does not require that the key phrase of the definition in subsection (b)(1) — which refers to “other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient” — be effectively read out of the definition. Instead, the dual requirements of subsection (b)(9) that the physician certification include the statement that “the patient suffers from a debilitating medical condition” and the statement “that the potential benefits of *824 the medical use of marijuana would likely outweigh the health risks for the patient,” are entirely consistent with the understanding that the general phrase in the definition controls the specifically enumerated conditions. Subsection (b)(9) simply requires the physician to state the conclusion that the patient is eligible as a patient with a “debilitating medical condition” and to state the basis for that conclusion— namely, that the benefits of the medical use of marijuana outweigh the risks for the particular patient.
In maintaining that only debilitating diseases are within the scope of the subsection (b)(1) definition, the majority is determinedly oblivious to the fact that “debilitating medical condition” is a specifically defined term and that neither the term “debilitating” nor the term “disease” appears in the operative language of the definition. The majority is also determinedly oblivious to the fact that “medical condition” is a broader, more inclusive term than “diseases.” By reading “debilitating diseases” into the operative language of the definitions set forth in subsection (b)(1), the majority gives the definition a meaning that the text of the definition does not admit. As a result, the majority turns a blind eye to the misleading reference to “debilitating diseases” in the ballot summary, a reference that cannot be squared with the text of the amendment, which allows physicians to authorize the use of medical marijuana not only for patients suffering from a debilitating disease but for any patient suffering from a condition “for which [the] physician believes that the medical use of marijuana would likely outweigh the potential health risks for [the] patient.”
III.
Foisting this seriously deceptive ballot summary on the voters does a severe disservice to the people and to their constitution. The proposed amendment should not be placed on the ballot. The sponsors of this amendment should be given an opportunity to pursue their objective with a new proposal that has a ballot summary that does not mislead the voters.
POLSTON, C.J., concurs.